GARDEN SUBURBS GOLF & COUNTRY CLUB, INC., a New Jersey corporation, authorized to transact business in Florida, v. FRANK O. PRUITT, as Receiver of Deauville Corporation, a Delaware corporation, authorized to transact business in Florida.

24 So. (2nd) 898                                          January Term, 1946
January 25, 1946                                                    En Banc
Rehearing denied March 4, 1946

*L. L. Robinson, Spessard L. Holland* and *J. Lewis Hall,* for appellant.

*Charles A. Carroll, John M. Murrell* and *J. M. Flowers,* for appellee.

SEBRING, J:

This is a suit for a declaratory decree construing the terms and provisions of a long-term lease and the rights of the parties thereunder.

Thomas Manor Inc., a Florida corporation, owned certain hotel property in Dade County, Florida, known as the Deauville Hotel. The owner leased the property to Garden Golf & Country Club, Inc., for a term of thirty-three years upon a "percentage rental" basis. The lessee sublet the entire premises to Bernarr Macfadden Foundation, Inc., under a sublease containing identical provisions for payment of rents as were contained in the primary lease between the owner and the original lessee. Thereafter, the owner sold and conveyed the hotel property and its rights under the lease to Deauville Corporation, the original defendant in this suit.

After the execution of the sublease by the original lessee to Bernarr Macfadden Foundation, Inc., the latter corporation went into possession of the premises and has been operating the room, cabana club, and swimming pool facilities of the hotel. All other revenue producing facilities on the hotel premises, such as the dining room and kitchen, the bar, the beauty shop, the barber shop, the flower shop, and the photograph studio, have been let by Bernarr Macfadden Foundation, Inc., to various independent operators. Some of these independent operators pay rent to Bernarr Macfadden Foundation, Inc., upon a fixed rental basis, while others pay upon the basis of a percentage of the gross business done by such individual concessionaires.

As rents under the sublease Bernarr Macfadden Foundation, Inc., has been paying to its sublessor, Garden Suburbs Golf & County Club, Inc., an amount equal to ten percentum of all gross receipts realized by it from its direct management and operation of the room, cabana club and swimming pool facilities of the hotel and ten per centum of all amounts received by it as rents from the independent operators who manage and operate concessions on the hotel premises. Garden Suburbs Golf & Country Club, Inc., the original lessee, has been paying as rents to Deauville Corporation, the grantee of the original lessor, all amounts received by such lessee from its sublessee, Bernarr Macfadden Foundation, Inc.

The pertinent provisions of the lease are as follows:

1. The Tenant agrees to pay as rent the following percentages of the gross receipts of any business conducted by the Tenant on said premises, for the first year, five percent (5%), for the second year, six percent (6%), for the third year, eight percent (8%), for the balance of the term, ten percent (10%), guaranteeing, however, a minimum of Fifteen Thousand ($15,000) dollars per annum, payable quarterly; the percentages provided for to be computed after deduction of taxes, assessments and insurance, which the Tenant expressly agrees to pay commencing from the date hereof.

"11. The Tenant shall have the right to sublet portions of the premises, or concessions, or privileges therein, except that

the income received from such subletting shall be included and made part of the gross income upon which the percentages heretofore provided to be paid to the Landlord shall be figured.

"12. The gross receipts shall be audited at the close of each fiscal year by a Certified Public Accountant at the expense of the tenant, a copy of such audit to be furnished to the Landlord, and, based upon such audit, payments shall be made to the Landlord within twenty (20) days after such audit of the percentages herein provided for, less payments made during the year."

The questions arising under the lease are (1) whether under paragraph 1 the original lessee is required to pay rents to the owner based upon the total gross receipts from all businesses conducted upon the premises, or whether by reason of paragraph 11 the lessee is privileged to sublet the entire premises, including the concessions and base the rentals to be paid the owner only upon the income actually received by the lessee from sublessees and independent concessionaires; (2) whether under paragraphs 1 and 11 the original leassee in computing rents to be paid is required to take into account commissions paid by the lessee for the procurement of business; complimentary hotel accommodations given special guests; telephone, telegraph, flower, valet and laundry bills of hotel guests paid for by the hotel but charged on the final bill of said guests; delivery charges; check room charges, vending machine and coin locker receipts; purchase discounts; sundry equipment rental; insurance recoveries; book sales; and recovery of bad debts previously charged off; (3) whether or not paragraph 11 is sufficiently comprehensive to authorize the lessee to sublet the major revenue producing operations of the hotel, such as the bar and dining facilities of the hotel, or whether he is confined to subletting only minor revenue facilities of the hotel of the character customarily made available in resort hotels but not ordinarily operated by the hotel management except on sublease or concessions, such as hat or cloak check room, barber shop, flower shop, massage, photography privileges, gift shop, cigar stand, news stand,

and similar concessions; (4) whether or not paragraph 12 pertaining to the annual audit of the business is satisfied by an annual audit made by a certified public accountant employed by the lessee with the audit made under supervision of the bookkeeping staff of the lessee, or contemplates an audit by an independent certified public accountant mutually agreeable to the parties with all records upon which audit is made being readily available for inspection by either of the parties to the lease.

In settling these questions upon the pleadings and testimony taken upon the issues the chancellor found that in computing the rents to be paid, the provision contained in paragraph 11 of the lease which gave the lessee the right "to sublet portions of the premises, or concessions, or privileges therein" had reference, within the contemplation of the parties, only to ordinary minor concession features of a hotel of the type involved, such as the barber shop, flower shop, cigar stand, news stand, and the like; and that it was not within the contemplation of the parties that the entire premises or the main revenue producing facilities which are customarily operated and managed by the proprietor of a resort hotel, could be subleased and the owner thus deprived of a percentage of the gross receipts realized therefrom. Upon these findings the chancellor decreed that in determining gross receipts upon which the ten per centum as rents should be calculated, the following should be included: gross receipts from all rooms and cabanas rented; gross receipts from the swimming pool, dining room and bar facilities; rental or income received by the lessee from all concessions or subleases of minor revenue producing facilities; income from the Health Department facilities, which are now being operated on the premises by Bernarr Macfadden Foundation, Inc.; gross receipts from local telephone calls; income earned by reason of service charges made to guests for long distance calls as well as income earned by reason of a discount obtained by the lessee from the telephone company in making payment to the telephone company of such long distance telephone calls. The chancellor also found that if the service charge or a commission is made or earned by the hotel for laundry service, valet

service, delivery charges, or flower purchases, that such service charge or commission should be included in and made a part of the gross receipts upon which the tenant is required to pay a percentage of ten per centum for rental; that commissions paid for the procurement of business for hotel rooms and cabanas and the pool should be included in the gross receipts upon which the lessee is required to pay a percentage of ten per centum as rental, but that complimentary rooms should not be included, no unreasonable use of such rooms by the hotel being shown; that profits on the sale of assets, interest on loans receivable, purchase discounts, insurance recoveries, and bad debts should not be included in gross receipts. With reference to paragraph 12 of the lease, the chancellor ruled that the lease provision contemplates and requires an independent audit by a certified public accountant mutually agreeable to both parties, the accountant not to be instructed, influenced or controlled by either party, and with the lessee charged with the responsibility of making available to the owner for inspection, full, complete and accurate records of operation of the premises or concessions therein so that the owner, if he so desires, may check or spot check records for the purpose of verifying the audits.

In all particulars, but one, we approve the foregoing findings of the chancellor and are of the view that they are supported by the evidence. We find nothing in the transcript, however, to warrant the finding that the annual audits are to be made only by a certified public accountant mutually agreeable to *both* parties. We think that paragraph 12 of the lease is satisfied by the employment of a person holding a certificate of authority to practice as a public accountant issued under the provisions of chapter 473 Florida Statutes 1941 who may be chosen and paid for by the lessee; and that so long as a full, true, perfect and complete audit is made by such individual, and the owner of the premises is given reasonable access to the books and records from which the audit is made for the purpose of verifying the same, the owner can have no cause to complain that paragraph 12 is being violated.

Error has been assigned as to one other feature of the final decree, which we think is well taken. After fully con-

struing the lease provisions the chancellor ordered the plaintiff "to account herein for all gross income heretofore received by it or its sublessee or tenants of the sublessee from operation of the dining and bar facilities of the hotel within thirty (30) days from date hereof, and upon the stating and approval of such account, to pay over to the Receiver of the defendant corporation such sums as shall be found to be due and owing to the lessor as unpaid annual rental for the hotel premises on the basis herein declared and fixed." In ordering such accounting and payment over, we think that the chancellor went too far under the state of the pleadings. As we read the transcript before us, the suit was instituted under chapter 21820, Laws of Florida 1943, for a declaration of the rights, status and equitable and legal relations of the parties under the lease involved. Plaintiff limited its prayers in the bill of complaint to the field of declaratory relief and to injunction in support of the primary objective of the bill. No accounting was sought by either party to the suit, or by the receiver who was subsequently substituted as a party defendant and now defends the suit, yet the foregoing provision of the decree complained of requires the plaintiff to account and to pay over amounts found to be due and owing to the defendant's receiver.

Although chapter 21820, Laws of Florida, 1943 contemplates that in a proper case supplemental or additional relief based upon a declaratory decree may be granted, section 7 of the statute requires that application for such relief shall be by petition to the circuit court having jurisdiction to grant the relief, with reasonable notice accorded the adverse party to show cause why such relief should not be granted. We fail to find that such procedure was followed in the case at bar. It follows therefore that as to this feature of the case the decree appealed from must be reversed, but with leave to the parties and the court below to proceed to an accounting or other relief upon supplemental pleadings if such course seems necessary or proper.

The decree appealed from is affirmed in part and reversed in part, with directions that a decree be entered in accordance with this opinion.

It is so ordered.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD, THOMAS and ADAMS, JJ., concur.