## DEAUVILLE CORPORATION v. GARDEN SUBURBS GOLF & COUNTRY CLUB, Inc.

### No. 12039.

Circuit Court of Appeals, Fifth Circuit.

Nov. 18, 1947.

R. H. Ferrell, of Miami, Fla., Charles Danton and James Lathero, both of Miami Beach, Fla., and Samuel H. Rubin, of Detroit, Mich., for appellant.

A. Frank Katzentine, Alonzo Wilder and W. Sanders Gramling, all of Miami, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The case was disposed of without a trial by a judgment of dismissal with prejudice, from which the plaintiff, Deauville Corporation, appeals.[1] The record contains, besides the original complaint and the original answer, a number of motions to amend the answer, affidavits and counter-affidavits concerning a motion by plaintiff for a summary judgment, motions to strike them, to not allow amendments, to intervene, and for new trial. In making his judgment the judge recited that the case was before him on the motion for summary judgment and on all the pending motions, but he dealt expressly only with the motion for summary judgment, denying it. He then ordered that a deposit in court of $90,225 made by the defendant (appellee) be transferred to another case which he recited was pending between the parties in his court for ascertaining the rent due, and because the plaintiff had "wholly failed to show that it is entitled to the relief sought in this case, this case is hereby dismissed with prejudice." In a written opinion the failure is stated to consist in this: that the only relief sought is possession of leased premises because of a forfeiture arising from nonpayment of rent, and it is not shown by the complaint that demand for the payment of any specific sum of money as rent due was made, and in the notices given no definite amount of rent claimed was stated, so that the notices are insufficient to support eviction. The opinion further indicates that it was thought that all the Florida cases sustaining eviction had involved fixed rentals, the amount of which was not disputed, but this rental, beyond a fixed minimum of $15,000 per year, was a percentage of each year's profits from all businesses conducted on the premises, to be ascertained by an audit at the end of each fiscal year; that there was no definite date fixed for the audit, and no provision for forfeiture on failure to make it by any date; that there was dispute and pending litigation over the amount of it, and until the amount was fixed there could be no proper demand and no forfeiture and eviction for failure to pay.

The complaint exhibits the lease which is for thirty-three years from June 24, 1935, and fixes "as rent the following percentages of the gross receipts of any business conducted by the tenant on said premises * * * guaranteeing however a minimum of fifteen thousand dollars per annum payable quarterly." The lease further provides: "5. In the event of default by the tenant in the performance of the covenants relating to payment of rent, taxes and assessments, such default continuing for a period of forty-five days, the landlord may give written notice of its intention to terminate the lease unless the tenant shall remedy such default within forty-five days after receipt of such notice." It is further provided that from the percentages over and above $50,000 the tenant may deduct payments made on insurance, taxes and assessments during the current year, and fifty percent of the cost of advertising and promotion; and the tenant is given the right to sublet portions of the premises, which for years has been done. Finally it is provided: "The gross receipts shall be audited at the close of each fiscal year by a certified public accountant at the expense of the tenant a copy of such audit to be furnished the landlord, and based on such audit, payments shall be made to the landlord within twenty days after such audit of the percentages herein provided for, less payments made during the year." The complaint then states that on March 6, 1946, a mandate went down from the Supreme Court of Florida in a suit by the

---

1. Two appeals were taken by different counsel, but they have been on motion consolidated.

tenant against the landlord to construe the lease as to what the percentages covered, and that by the opinion of the Supreme Court computation of the percentages was put on a different basis from what had been theretofore used; in consequence of which it became necessary to have an audit of the previous years and to pay increased rent, but that this not having been done by July 15, 1946, a period of more than forty-five days from the date of the mandate, an exhibited notice was given the tenant. That notice states that by reason of the nonpayment of excess rent as directed by the Supreme Court, "the undersigned hereby gives you formal notice of its intention to terminate said lease and tenancy as set forth in Par. 5 of the said lease." The notice states no amount of rent as due, but the complaint states that complainant believes it would be $300,000. The complaint then alleges that on July 14, 1946, the payment then due for the fiscal year ending June 24, 1946, was not paid, and that on Sept. 2, 1946, another written notice was given, and that complainant upon information believes $150,000 was due. This second notice states that "Excess percentage rental, over and above the quarterly installments, for the fiscal year commencing June 25, 1945, was due July 14, 1946. Affirming previous notice, it is the intention of the undersigned owner and lessor to terminate your lease and tenancy in accordance with paragraph 5 of the lease." Without more, this suit for possession was brought Oct. 29, 1946.

Appellant contends that this is a statutory proceeding to evict, authorized by Florida Statutes of 1941, Sec. 83.20, F.S.A., and that nothing is needed but to prove that some rent was due and was not paid on demand. The complaint, however, does not refer to the statute, and does not allege, as it requires, that "three days' notice in writing, requiring payment of such rent or the possession of the premises shall have been served." The statute makes no provision for ascertaining what amount is due, if in dispute, and no case is presented in which it has been applied by the Florida courts where the rent was uncertain and needed to be fixed and ascertained. Where the contract, as here, states no fixed rent (except the quarterly minimum payments, which are not alleged to be in default) but only percentages of profits, made in business, subject to uncertain allowances for expenditures, and the tenant is alleged to be engaged in an effort to get the amount properly fixed by litigation in the State courts, we think this summary remedy is not properly applicable. The landlord does not pretend to know what is due. The case in which he says the Supreme Court of Florida has given an opinion is conceded in argument to be that reported as Garden Suburbs Golf & Country Club v. Pruitt, 156 Fla. 825, 24 So.2d 898. The report shows, not a decree fixing an amount due, but a partial reversal with leave to take an account, and it does not appear that any final decree has yet been had. In Baker v. Clifford-Mathew Investment Co., 99 Fla. 1229, 128 So. 827, the Supreme Court of Florida elaborately considered the eviction statute relied on in the present case, along with an earlier statute found in Florida Statutes of 1941, Sec. 83.05, F.S.A., which authorizes a landlord having rent due and not paid on demand to enter and take possession, and held broadly that under common law, not changed by these statutes, the demand for rent due to be the basis of eviction, (although in Baker's case the rent was a fixed and certain amount), must be by the landlord or his authorized agent, of the exact amount due, on the day it is due, at the most notorious place on the demised premises, except where the rent is made payable at some other place, in which case the demand must be made there. It was declared that a lessee has an estate and that forfeitures are not favored in law or in equity, and to cause a forfeiture great strictness in fulfilling all conditions in the statute or the lease is necessary; and for want of proof of "such a demand as was required at common law" the case was reversed. Under this decision, the above notices, sent by mail, naming no sum as that due and neither demanding the rent nor possession, but merely stating an intention to terminate the lease because full rent has not been paid, are insufficient.

But the answer and exhibits and affidavits show much more: that there has

been prior litigation as to the computation of the rents which resulted in the establishment of a method favorable to the tenant, and which is contended to be an estoppel by judgment not dealt with by the recent opinion of the Supreme Court of Florida; that the defendant has now had audits made for all years under both methods of computation; has tendered absolutely the accruing fixed rentals, and paid the instalments thereof not accepted into court as a continuing tender, and has also deposited in court some $80,000 as covering the amount that would be due under the opinion of the Supreme Court as security for whatever amount is found owing; that the defendant is ready and able to pay whatever is due, and to comply with all obligations under the lease as they may be determined by the court. The proposed amendments of the answer, after a formal withdrawal of the motion to dismiss the complaint, expressly pray that the court retain jurisdiction and determine what is due and provide for its payment from the deposit in court, and that it be decreed that no forfeiture has been incurred, and that an injunction issue. Whether the complaint states a case for statutory eviction or not, or whether it is a suit for possession under the general power of the district court, we are clear that on the whole record the refusal of a summary judgment for plaintiff was right. This lease has no express provision for forfeiture. The minimum quarterly rents are in no default. The percentages are not due till twenty days after an audit by a certified accountant. No more precise date is fixed for the audit than that it is to be "at the end of the fiscal year." What is to be the fiscal year is not stated. The word "at" is not always precise. Webster's International Dictionary states that its primary significance is "Nearness in place or time". If it be supposed that the fiscal year ends, as the lease years does, on June 24, a complicated business with many departments and details

such as is involved here could not be audited precisely at the end of the year, if indeed a certified public accountant stood ready to do it. Great punctuality has not been required in the past. The landlord could himself have the audit made at the tenant's expense within the words of the lease. No forfeiture for delay in auditing is provided either by the lease or any statute. And relief from inequitable forfeiture is an ancient head of chancery jurisdiction. There would be much in the circumstances of this case to favor this relief on condition of full payment of rent with interest, if indeed a forfeiture has been incurred. See Rader v. Prather, 100 Fla. 591, 130 So. 15; 32 Am.Jur., Landlord and Tenant, Section 891 and ff.

But these considerations, while supporting the denial of the motion for a summary judgment, make against the dismissal of the whole cause without a trial. The defendant having formally withdrawn its motion to dismiss and invoked relief that would end the controversy, we think the amendments ought to be allowed and the case tried on its merits. If (as the judge states) there is another case pending in the district court which involves the same issue as to the rents, the two may be consolidated as provided in Federal Rules of Civil Procedure, rule 42, 28 U.S.C.A. following section 723c. The tenders and the deposits made will thus be better preserved for the benefit of both parties. The transfer of the deposits to another case, the depositor objecting, may not be proper. See Masser v. London Operating Co., 106 Fla. 474, 484, 145 So. 72.

We therefore affirm the refusal of a summary judgment, but reverse the judgment of dismissal, and remand the case for further proceedings consistent with this opinion. Because each party has partly succeeded in this court, the costs of appeal will be equally divided between them.

Reversed.