Dickey, Appellant, *v.* Philadelphia Minit-Man Corporation.

Argued April 13, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert W. Beatty,* with him *Morton Witkin* and *Butler, Beatty, Greer & Johnson,* for appellant.

*Robert D. Abrahams,* with him *Maurice J. Klein, George H. Class, Abrahams & Lowenstein* and *Lindenmuth & Class,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 2, 1954:

This case presents a question of first impression in Pennsylvania but one that has been considered, with some resulting diversity of opinion, in several other jurisdictions.

Plaintiff, Samuel Dickey, in 1947 leased to defendant, Philadelphia Minit-Man Corporation, a vacant piece of land in Millbourne, Delaware County, for a term of ten years with an option to the lessee of an additional ten-year term. The lease provided that the premises were to be occupied by the lessee "in the business of washing and cleaning automobiles within the scope of the business of the Philadelphia Minit-Man Corporation, . . . and for no other purpose." As rent the lessee was to pay a sum equal to 12½% on the amount of the annual gross sales but a minimum of $1,800 per year; the term "gross sales" was to include the sales price of all merchandise sold and also all charges for services performed by the lessee in the course of the business conducted on the premises. The lessee agreed to erect and place on the premises the buildings and equipment needed to carry on the business; all buildings and fixtures erected by the lessee were to become the property of the lessor as and when the lease agreement should expire for any reason whatever. If default were made in the observance or performance of any of the conditions or agreements the lessor was to have the right to terminate the lease and re-enter the premises.

Defendant erected the buildings, installed the necessary equipment, and washed and cleaned cars until August, 1952, when it discontinued that feature of its business except as incidental to simonizing and polishing, and it so notified the public. Defendant never failed to pay at least the minimum rental, but in September, 1953, plaintiff filed the present action in ejectment seeking recovery of possession of the property on

the ground that defendant had defaulted by discontinuing the business specified in the lease. Defendant filed preliminary objections in the nature of a demurrer to the complaint; the court below sustained the objections and dismissed the action. Plaintiff appeals.

The question involved is whether there was any implied obligation on the part of the lessee to continue to conduct the business on the premises of washing and cleaning cars if its failure to do so resulted in a diminution of rental payable to the lessor.

Generally speaking, a provision in a lease that the premises are to be used only for a certain prescribed purpose imports no obligation on the part of the lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a noncomplying use, not a covenant to use. Plaintiff urges, however, that in a lease such as that here involved, in which the amount of rental to be paid is based upon the lessee's gross sales, there arises an implied obligation on his part to continue the business on the premises to the fullest extent reasonably possible. Defendant, on the other hand, contends that, where such an obligation is intended, it must be expressly inserted in the lease, and that the raising of an implied covenant is never justified except where obviously necessary to effectuate the intention of the parties and so clearly within their contemplation that they deemed it unnecessary to express it, and that this is especially true where a substantial minimum rental is provided the obvious purpose of which is to protect the lessor from any unfavorable circumstances that might subsequently arise whether caused by voluntary conduct of the lessee or by events beyond his control.

In *Joseph E. Seagram & Sons v. Bynum*, 191 F. 2d 5, it was held that the provision in a lease of a mill to a distilling company for a percentage rental based

on the number of barrel staves and heads produced at the mill did not impliedly obligate the lessee to operate the mill at its reasonable productive capacity in the absence of any express provision therein so requiring.

In *Jenkins v. Rose's 5, 10 and 25¢ Stores, Inc.*, 213 N. C. 606, 197 S.E. 174, where there was a lease of a store building with a guaranteed minimum rental and a provision for a percentage payment on any sales in excess of a certain amount, it was held that there was no implied covenant to operate a store in the building and that the payment of the minimum rental was a complete fulfillment of the lessee's obligation.

In *Palm v. Mortgage Investment Co. of El Paso*, 229 S. W. 2d 869 (Texas Civil Appeals) there was a lease of a building for a retail shoe store and shoe repair shop, with a provision for a minimum rental but with an option to the lessor to take a certain percentage of the gross sales of the lessee's business. It was held that the lessee could not be held liable for breach of any implied covenant that he would maintain in the leased premises a business of substantially the same size and character as he had conducted therein in prior years.

In *Cousins Inv. Co. v. Hastings Clothing Co.*, 45 Cal. App. 2d 141, 113 P. 2d 878, where a lease provided for a rental payment of a prescribed percentage of the gross income of the lessee's business with a certain monthly minimum, it was held that the lessee, which moved its business to another location shortly prior to the expiration of the lease, was not liable for the percentage rental which the lessor would have received if the lessee had remained in business on the premises, because there was no implied covenant requiring the lessee so to do. The court said that it would seem that the covenant to pay the minimum rental was inserted in the lease as a substitute for

an express covenant requiring the continuous operation of the demised premises.

In *Masciotra v. Harlow,* 105 Cal. App. 2d 376, 233 P. 2d 586, there was a lease of the equipment and contents of a cafe for the purpose of operating a restaurant and the lease provided for a rental of a certain percentage of the gross receipts with a stipulated minimum. It was held that the removal of the business by the lessee prior to the expiration of the lease was not violative of any implied covenant to so conduct his business on the premises as to make it mutually profitable to both parties. The court said (p. 380, P. p. 589) that it could "only be concluded that the parties considered the stipulated minimum rent to be in itself fair and adequate and any additional sum was in the nature of a bonus which the lessee was willing to pay if his business exceeded his expectations."

If an implied covenant, as claimed by plaintiff, should be held to arise in such cases what would be the extent of the restriction thereby imposed upon the lessee? Would it extend to each and every act on his part that might serve to reduce the extent of his business and thereby the percentage rental based thereon? Would it forbid him, for example, if operating a retail store, from keeping it open for a fewer number of hours each day than formerly? Would it forbid him from dismissing salesmen whereby his business might be reduced in volume? Would it forbid him from discontinuing any department of his business even though he found it to be operating at a loss? It would obviously be quite unreasonable and wholly undesirable to imply an obligation that would necessarily be vague, uncertain and generally impracticable.

There are cases in some jurisdictions in which a view was taken by the courts contrary to the decisions in the authorities previously cited, for example, *Genet*

*v. President of Delaware and Hudson Canal Co.*, 136
N. Y. 593, 32 N.E. 1078; *Sinclair Refining Co. v. Davis*,
47 Ga. App. 601, 171 S.E. 150; *Sinclair Refining Company v. Giddens*, 54 Ga. App. 69, 187 S.E. 201; *Marvin Drug Co. v. Couch*, 134 S.W. 2d 356 (Texas Civil Appeals). Other cases relied on by plaintiff are distinguishable on one ground or another. Thus in *Goldberg 168-05 Corporation v. Levy*, 9 N. Y. S. 2d 304;
11 N. Y. S. 2d 315, where the lease provided that in
the event that the gross sales of the lessee fell during any year below a specified sum he should have the
right to terminate the lease, it was held that he could
not escape paying the agreed-upon percentage of rental
on his gross receipts by diverting business to another
store for the sole purpose of depressing the gross receipts below the specified figure so as to lay the basis
for a cancellation of the lease. In *Selber Bros. Inc. v.
Newstadt's Shoe Stores*, 194 La. 654, 194 So. 579; 203
La. 316, 14 So. 2d 10, the lessee of a shoe store abandoned the leased premises altogether and moved his
business to a new location a block away. In *Mayfair
Operating Corporation v. Bessemer Properties, Inc.*,
150 Fla. 132, 7 So. 2d 342, there was an express clause
in the lease requiring the lessee to use its best efforts
to obtain and maintain the highest volume of business
on the premises. In *Cissna Loan Co. v. Baron*, 149
Wash. 386, 270 P. 1022, where the plaintiff sold a department store business to the defendant and leased
to him the building in which the business was conducted, there was a clause in the lease requiring the
defendant to maintain and conduct the business in the
building of the same general character as it had been
conducted therein by the plaintiff, and to carry and
maintain a stock of goods of the same general character as had been maintained by the plaintiff. In
*S. P. Dunham & Co. v. 26 East State Street Realty Co.*,
134 N. J. Eq. 237, 35 A. 2d 40, the lessee, which con-

ducted a general department store business on the demised premises, removed two of its most lucrative and remunerative departments from the demised premises to the second floor of another building in an endeavor to diminish the percentage rental on the gross sales provided for in the lease. In *Garden Suburbs Golf & Country Club, Inc., v. Pruitt,* 156 Fla. 825, 24 So. 2d 898, where the lease obligated the lessee to pay as rent a specified percentage of gross receipts of any business conducted by him on the premises, it was held that he could not evade such obligation by subletting portions of the premises or granting concessions not authorized by the lease, thereby depriving the lessor of a percentage of the gross receipts realized from the business of such sublessees and concessionaires.

There are no such factual elements here present as characterized those cases and formed largely the basis for the decisions there rendered. Defendant has not moved any part of its business to another location nor deliberately sought to decrease the percentage of rent payable in order to induce plaintiff to declare a termination of the lease; on the contrary, it is seeking to maintain the lease. Nor is there anything in the present case to indicate that defendant's action in discontinuing the washing and cleaning of cars except as incidental to simonizing and polishing was taken other than in good faith and in the exercise of legitimate business judgment. In our opinion it was not forbidden by any implied obligation in the lease.

The decree is affirmed and judgment is here entered for defendant.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Majority Opinion states that this case presents a question of first impression in Pennsylvania. Untrammeled, therefore, by *stare decisis,* unbounded by

restrictive precedent, unencumbered by authoritative decisions, it could be hoped that that question would be considered in the clear light of reason, logic and elemental justice. It does not appear to me that that hope has been realized. Instead of deciding the case in accordance with venerated and fundamental principles of jurisprudence and fair dealing between business men, the Majority has enumerated a number of out-of-State cases, none of which presents facts exactly in point with those in the case at bar. Collectively these foreign cases make up an archipelago of decisions in the vast sea of jurisprudence on leases, but not one of them touches the mainland of the fundamental principle that a lease is, after all, only a contract and is accordingly to be enforced in accordance with its provisions as ascertained from the wording of the contract. In Corpus Juris Secundum, (17 C.J.S. 683) we find this most rudimentary rule of construction of contracts: "A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language, but will enforce or give effect to the contract according to its terms, in the absence of fraud or other grounds affecting enforcement according to its terms."

There is no allegation of fraud in this case, nor is there any other ground which affects enforcement according to its terms. In the most unambiguous language that one could desire, the lease-contract here states that the premises are: "to be used and occupied by said Lessee in the business of *washing and cleaning automobiles* within the scope of the business of the Philadelphia MINIT-MAN CORPORATION, aforesaid, upon completion of and subsequent to the building, erection and placing on the said premises of suitable buildings and necessary equipment relevant to

the carrying on of the business aforesaid, *and for no other purpose.*"*

The Majority Opinion makes no attempt to explain the all-exclusive finality of the phrase *for no other purpose.* Instead, it discusses hypothetical situations. It says that if the plaintiff is to prevail, does this mean that the defendant would be forbidden, "if operating a retail store, from keeping it open for a fewer number of hours each day than formerly? Would it forbid him from dismissing salesmen whereby his business might be reduced in volume? Would it forbid him from discontinuing any department of his business even though he found it to be operating at a loss?

There is nothing in the contract about a retail store; the agreement is empty of any reference to the dismissing of salesmen; the lease is silent on any subject referring to discontinuance of a department of business. The lease, however, is saturated with provisions and conditions to the effect that the lessee may not use the premises except for the purpose of washing and cleaning automobiles. But the Majority avoids discussing the washing and cleaning of automobiles.

The lease says further that the lessee covenants to pay $12\frac{1}{2}\%$ on the amount of gross sales over and above the minimum rental of $1800 per annum. Gross sales is defined in the contract as follows: "The term 'gross sales' as herein used shall be held to include the sales price of all merchandise of every sort whatsoever sold, including all charges for all services performed by the Lessee in the course of the business aforesaid." The "business aforesaid," of course is the cleaning and washing business.

The Lessee covenants that: "it will keep separate and accurate records of the gross sales covering all

---

* All italics mine.

business done or transacted in, upon, or from said demised premises." The Lessee agrees: "to build, erect and complete all necessary buildings on the said demised premises in order to begin and carry on the said business aforesaid, including all utilities necessary for the operation and occupation of said building in the manner provided herein."

I repeat that the "business aforesaid" is the business of cleaning and washing automobiles.

Paragraph 6 of the lease prohibits the lessee from going into the liquor business and then declares that the premises shall not be "used for any other purpose than as above specified, nor make any change in the business purposes as now understood and agreed, without written consent of the Lessor first had and obtained."

Thus, the lease, in the clearest and most direct phraseology possible, declares that (1) the premises are to be used only for cleaning and washing automobiles; (2) that the lessee is to pay to the lessor a certain percentage on the revenue derived from cleaning and washing automobiles; (3) the lessee is to erect a suitable structure and install necessary equipment for cleaning and washing automobiles; and (4) the lessee cannot use the premises for any purpose (except he have written consent from the lessor) other than cleaning and washing automobiles. With this inundation of expressed purpose, how can the Majority say that if there is one thing the defendant is not required to do, it is the cleaning and washing of automobiles?

Paragraph 11 of the lease-contract declares that the lessee *covenants* and agrees that: "if default be made in the punctual payment of said rent or any part thereof, or in the observance of performance of any of said conditions or agreements, The Lessor may, without no-

tice to the Lessee, and without demand for rent due, *terminate the Lease."*

This paragraph says further that the lessee shall pay all costs and expenses involved in making collection of the said rent and in "enforcing any of the *provisions"* of the lease.

How can it be said that the agreement to use the premises only for washing and cleaning automobiles is not a *provision* of the lease?

To allow the defendant corporation here to repudiate the agreement it so specifically made and the conditions it so definitively accepted, is to read out of a contract what is so clearly in it and give meaning to language which is directly opposite to what it says. It is to make a mockery of written agreements, turn solemn obligations into writing exercises and introduce the courts into every agreement on the basis that they may be called upon to revaluate, reinterpret and rewrite the agreement.

After the parties had entered into the solemn contract already amply quoted from, they executed an addendum as if to reconfirm what they had already said in their original agreement. In the very last paragraph of this addendum appears this supremely significant statement: "Notwithstanding any of the provisions to the contrary, therein contained in said original lease agreement, it is expressly understood that a certain Minit Man *Automatic Car Washing Machine,* intended to be installed in the demised premises, shall at the termination of the lease remain the sole and exclusive property of the Lessee, who shall be privileged to remove the same at such time without any interference on the part of the Lessor."

Could anything be more confirmatory than this of the fact that the cleaning and washing of automobiles

was the business that the lessee intended to devote himself to?

The lower court made the following observation in its Opinion: "We are told the lease before us was drawn by plaintiff's attorney; it would have been a simple matter for him to have inserted in the lease, as he drew it, a clause requiring full use of defendant's operation and a forfeiture in the event of his failure."

There is no doubt that if the drawer of the contract could have anticipated that the meaning of simple English could be so beclouded in its reading, he might have added the suggested clause and perhaps even illustrated it with pictures, but I doubt that even *that* could have made it clearer that the lessee agreed, promised, covenanted and obligated himself to use the demised premises for cleaning and washing automobiles.

The Majority Opinion says that there is nothing "in the present case to indicate that defendant's action in discontinuing the washing and cleaning of cars except as incidental to simonizing and polishing was taken other than in good faith and in the exercise of legitimate business judgment." The record is absolutely devoid of any factual foundation upon which to erect a superstructure of such laudation. Furthermore, the defendant corporation has no right in the law to use business judgment which will work an advantage to itself at the expense and loss of the other party to the agreement. The *plaintiff* also used what he considered was "legitimate business judgment" when he offered to lease his property to the defendant on the basis that the defendant would use the premises for the business of washing and cleaning automobiles. Even the name of the defendant corporation is one identified throughout the area with the cleaning and washing of automobiles.

The lower court says that the phrase "cleaning and washing automobiles" is descriptive, rather than directive. The paragraph in the lease describing the premises is certainly descriptive. Is it any less effective on that account? The manner in which the rent is to be paid is descriptive. Does that mean it can be ignored?

I dissent in this case not only on legal principles but in defense of the integrity of the English language. Despite the tortuous reasoning in the opinion of the lower court and despite the citations quoted in the opinion of the majority of this Court, I can only conclude that cleaning and washing automobiles means the cleaning and washing of automobiles.