320 P.2d 751

Ben SAPIR and Celia Sapir, his wife, Plaintiffs-Appellants,

v.

Jack EWING and Mary Helen Ewing, his wife, Defendants-Appellees.

No. 6295.

Supreme Court of New Mexico.

Jan. 9, 1958.

Rehearing Denied Feb. 5, 1958.

T. B. Keleher, John B. Tittmann, Russell Moore, Albuquerque, for appellants.

Botts, Botts & Mauney, Owen B. Marron, Albuquerque, for appellees.

COMPTON, Justice.

This is an action by appellants for rescission of a contract to convey real estate and to recover the amount previously paid thereon.

The property involved is located on West Central Avenue in Albuquerque. The

premises had previously been leased by appellees to Standard Oil Company, and a filling station was being operated thereon by the company at the time the questioned contract was entered into by the parties. The contract, dated May 15, 1953, was made subject to the terms of the Standard Oil Company lease. Subsequently, through the exercise of eminent domain, the city acquired a portion of the tract for the purpose of widening Highway 66, thus presenting a problem not only to the parties themselves but to Standard Oil Company as well. The area was so changed by the taking that Standard Oil Company ceased to operate the filling station.

As grounds for rescission, the complaint charged that appellees misrepresented facts as to ownership of the property, income from the existing lease, gallonage sold by Standard Oil Company, the extent of the tract, and that appellees knowingly withheld from appellants the fact that a portion of the tract was to be thus acquired for public purposes. The answer consisted of a general denial. Ratification was also pleaded as an affirmative defense, and by counterclaim, appellees sought to foreclose the sales contract for default in its performance.

At a pretrial conference, the parties stipulated, among other things, that on April 16, 1955, when appellants wrote a certain letter to appellees, the letter being the basis of appellees' asserted defense of ratification, that appellants had full knowledge of the facts alleged by them as grounds for rescission, except the prospective condemnation suit. The cause was subsequently tried on the issue of ratification, and incidentally, whether appellees were entitled to foreclose the contract. Judgment went for appellees; nevertheless, the court required them to follow the procedure for the foreclosure of mortgage deeds in foreclosing the contract.

We deem it desirable to set forth two letters exchanged between the parties. On April 6, 1955, appellees having learned the amount the city would be required to pay for the tract acquired by it, made an offer of settlement, as follows:

"Mr. Ben Sapir
"c/o Wilson & Ahern
"Attorneys at Law
"Simms Building
"Albuquerque, New Mexico

"Dear Mr. Sapir:

"The situation, as I understand it, with reference to the property at 4016 Central Avenue, SW, is as follows:

The City is taking by condemnation five feet off the front of the property, and in addition to this, a five foot setback may be required. The City offers to pay $13,400.00 for the five feet taken and incidental damages. There

is a possibility that an easement for the life of the building to use the set-back can be secured from the City. Whether or not such easement is secured, we have assurance from the Standard Oil Company that if the proceeds of the award are used to remodel the building and *accomodate* it to the street widening, the present lease will remain in force. The award offered by the City is adequate to finance the remodelling.

"You are buying the property under contract for the total price of $40,-000.00, one-half of which has been paid, and the remainder of which is payable to me in installments.

"It is my opinion that we should accept the award offered by the City and use the proceeds for remodelling the building so as to continue in force the Standard Oil lease. I am willing to go along on the contract on the above basis, or if this is not agreeable to you, to pay you the principal amount you have paid on the contract, terminate the contract, and resume absolute title to the property and use the proceeds of the award in remodelling the property.

"It must be apparent to you that delay in resolving these questions may impair the Standard Oil lease. Of course, the existence of the lease con-tributes largely to the value of the property.

"The purpose of this letter is to advise you as to my position, and to request a statement in writing of your position within five days. I see no necessity for further delay, and believe that additional delay may be damaging if it results in the loss of the Standard Oil lease.

> "Very truly yours,
> "J. M. Ewing
> "c/o Marron and McRae
> "608 First National Bank
> "Building
> "Albuquerque, New Mexico"

On April 16, 1955, appellants responded in the following manner:

"Marron & McRae,
"Attorneys at Law,
"First National Bank Bldg.,
"Albuquerque, New Mexico

"Attention: Mr. Owen B. Marron
"Re: Sapir vs. Ewing

"Dear Mr. Marron:
"Please be advised that this office represents Mr. Ben Sapir. On April 6, 1955, your client, J. M. Ewing, wrote to Mr. Sapir regarding the real estate contract between Mr. Sapir, as the purchaser, and Mr. Ewing, as the seller.

"Please be advised that Mr. Sapir stands ready, willing and able to comply with the terms of the contract mentioned above. Under the terms of the contract, Mr. Sapir pays the remaining balance due to Mr. Ewing at the rate of one cent for each and every gallon of gasoline sold.

"Mr. Sapir is in the process of analyzing the situation, and we may pay Mr. Ewing the balance remaining on his contract and use the proceeds, of the condemnation for whatever purpose Mr. Sapir desires.

"We would be happy to discuss the matter with you at your convenience.
"Yours very truly,
"S/ T. B. Keleher"

It is on these letters the court grounded its conclusion that appellants had ratified the contract. Appellants contend, however, that both letters were written in an effort to compromise threatened litigation, hence, the letters were inadmissible for any purpose. The problem is one of construction. The letters should be construed as to give effect to the intent of the parties when they were written, as disclosed by the language used. Fuller v. Crocker, 44 N.M. 499, 105 P.2d 472. Tested by this rule, it becomes obvious that appellees' letter was written in a spirit of compromise. But can we say as much for the reply? Appellants closed the door on further negotiations. They chose to rely on the terms of the contract, and manifested an intention of discharging the balance in a lump sum as permitted by the contract. At that time they were well satisfied, notwithstanding the action by the city. They even contemplated using the payment from the city for other purposes. Thus, they effectively ratified the contract. Subsequently, however, they executed an "about face", but having once elected to affirm the contract, their right to rescind, if any, had been lost. Armijo v. Nuchols, 57 N.M. 30, 253 P.2d 317. Significant is the fact that appellees' offer of rescission and restitution is exactly what appellants now seek to accomplish.

True, appellees, after having waited for almost a year for appellants to comply with the terms of the contract, renewed their efforts for a settlement. Appellants seize upon this to show that appellees treated the letter of April 16, 1955, as a counter proposition. We do not so construe it. To urge a settlement would seem logical under the circumstances. What else was there left to do?

The court concluded there was an implied covenant that appellants would keep the filling station in operation. A mere reading of the lease and contract convinces us that such implication is warranted. We take note of the pertinent pro-

visions of the lease and contract. The Standard Oil Company lease provides:

"2. Lessee agrees to pay Lessor rental for the use and occupancy of the leased premises as follows:

"On or before the 15th day of each and every month, commencing the 15th day of December, 1946, One Cent (1¢) for each gallon of gasoline delivered to the leased premises during the preceeding calendar month but not less than Five Dollars ($5.00).

\*   \*   \*   \*   \*   \*

"4. Lessor agrees during the term of this lease or any extension thereof to maintain in good condition and repair all service station equipment, facilities, yards, driveways, and other improvements installed or made by Lessor on the leased premises. Should Lessor fail to so maintain and repair Lessee shall, at Lessee's option, have the right either to make such repairs, and deduct the cost thereof from rents accruing hereunder, with reasonable interest allowance for moneys advanced, or to terminate this lease."

The sales contract provides:

"3. In consideration of the premises, the said Purchaser agrees to buy said real estate and to pay said Owner thereof the sum of Forty Thousand and no hundreds ($40,000.00) Dollars lawful money of the United States of America, which sum is to be paid as follows, to wit:

"Twenty Thousand and no hundreds ($20,000.00) Dollars cash in hand paid, the receipt of which is hereby acknowledged, and the balance payable as follows: ,

"$20,000.00 balance to be paid by a sum of One Cent (.01) per gallon, on or before the 15th day of June, 1953 and on or before each 15th day of each following month thereafter until the entire balance is paid including interest at the rate of 5%. This sum determined by the each and every gallon of gasoline delivered to the leased premises by the Standard Oil Company of Texas, according to the basic contract dated September 1st 1946 and recorded at the Bernalillo County Court House in Book 34 Page 485 on December 18th 1946 by and between Jack Marshall Ewing and Mary Helen Ewing, his wife and the Standard Oil Company of Texas.

"The Purchaser reserves the right to pay the Owner any sum in excess of the above mentioned amount at any time.

"It is understood and agreed that the purchaser's obligation of $20,000.00

plus 5% interest is guaranteed only by the above mentioned basic lease."

 Appellants now occupy the position as lessors with Standard Oil Company. Admittedly, they are bound by the terms of the lease. Consequently, there can be no question but that they were required to use every reasonable effort to maintain the filling station in the customary manner, not only for the benefit of the lessee, but for the purpose of discharging the balance due appellees on a gallonage basis. Lippman v. Sears, Roebuck & Co., 44 Cal.2d 136, 280 P.2d 775; Garden Suburbs Golf & Country Club v. Pruitt, 156 Fla. 825, 24 So. 2d 898, 170 A.L.R. 1107. Appellants, however, say nay, and cite the provision in the contract, "it is understood and agreed that the purchasers' obligation of $20,000.00 plus 5% interest is guaranteed only by the above basic lease." In effect, they are saying that while gas is not being run through the pumps, monthly payments of $5 is all that is required of them. This position is incongruous. Indeed, the indebtedness would never be discharged.

The record is free of error and the judgment should be affirmed. It is so ordered.

LUJAN, C. J., and McGHEE and KIKER, JJ., concur.

SADLER, J., not participating.