263 So.2d 258 (1972)
CITY OF MIAMI BEACH, a Municipal Corporation, Appellant,
v.
Gilbert FEIN, Appellee.
No. 71-729.
District Court of Appeal of Florida, Third District.
May 30, 1972.
Rehearing Denied July 7, 1972.
*259 Joseph A. Wanick, City Atty., for appellant.
Burnett Roth, Miami Beach, for appellee.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
PER CURIAM.
The appellant City of Miami Beach, was the plaintiff in the trial court. The City filed a complaint for declaratory judgment for the purpose of obtaining a court determination of the City's rights and duties in relationship to the appellee Gilbert W. Fein, an architect, with whom the City had contracted for the rendering of architectural services to the City in connection with the expansion of its then existing Convention Hall. The appellee, Fein, in his answer joined in the prayer for declaratory relief and asserted a liability on the part of the City to accept his services for an additional contemplated expansion of the Convention Hall.
The contract involved is a printed standardized American Institute of Architects form, with two typewritten Addenda. It was offered and received in evidence as a plaintiff's exhibit. The contract which was entered into on January 4, 1967, called for the payment by the City of an architect's fee of 4.8%[1] of the project construction cost. The project is defined in the contract as "an addition to the existing Convention Hall facilities, located on Washington Avenue, Miami Beach, Florida."
The court has set out in its declaratory judgment extensive findings of fact, some of which we think are essential to an understanding of the case and are therefore quoted:
"* * *
"C. A contract was entered into between the City of Miami Beach and Gilbert M. Fein, dated January 4, 1967, which contract had incorporated, as a part thereof upon its execution, an addendum of same date; and a second addendum *260 was entered into on February 15, 1967.
"D. The Architect, Mr. Fein, the City Councilmen, and other City representatives, examined the convention facilities of other communities in determining the specific improvements to be incorporated in the structure to be designed by the Defendant. The discussions of the Parties, and the proposed inclusion of specific improvements, resulted in a realization that the construction costs would exceed that which the City felt it could afford, and the Architect was directed to eliminate certain improvements, in order to keep the construction costs below $10,000,000.00.
"E. Discussions between the parties as to the cost of the contemplated expansion continued to fix the probable construction costs of the project, through April 5, 1967, at approximately $8,500,000.00.
"F. The City of Miami Beach had, since the summer of 1966, to April 5, 1967, been negotiating with both the Republican National Committee and the Democratic National Committee for those two national political parties to hold their 1968 Conventions in Miami Beach, recognizing that expanded facilities would be needed to accommodate either convention.
"G. On April 6, 1967, the City Manager recommended to the Miami Beach City Council that, in order to accommodate the Republican National Convention Committee which had indicated a firm interest in coming to Miami Beach for its 1968 Convention, that the Council approve the immediate planning of a `shell' improvement in expanding the existing facilities. At the same time, he recommended the source of available funds to pay immediately for the contemplated expansion, with possible reimbursement later from Resort Tax proceeds.
"H. The Defendant, Architect, was directed on April 14, 1967, by virtue of the City Council action on April 7, to immediately prepare plans for the contemplated `shell.'
"I. The Florida Legislature did, in June 1967, approve enabling legislation for the legal enactment of the Resort Tax which the City had been collecting since January 1, 1967."
The court then made additional findings, many of which were based on conflicting evidence.
"2. The Court does make the following additional Findings of Facts based upon the Evidence before the Court by way of testimony and exhibits:
"J. The City Manager, and later a Committee of the Council and the Administration, were authorized to negotiate with the Defendant, Gilbert M. Fein, for the setting of a fee for his services to be rendered in drawing the plans and specifications of the addition to the Convention facilities. At all times there was no definite price fixed for the project construction cost, but the discussions envisioned the probable costs anticipated to be from $8,000,000.00 to $9,000,000.00.
"The kind, size, type and scope of the facilities to be included in the addition which were discussed by the parties during their negotiations and discussions included the following as the scope of the project work which was agreed upon:
`Approximately 200,000 square feet of space including a large exhibit space, attendant smaller exhibit space and meeting rooms, lobbies, restaurant, cafeteria, bar, storage facilities, fixed seats, concession stands, public space, utility areas, truck service docks, remodeling of present building, pedestrian bridge to the Auditorium administrative areas, rest rooms, control rooms, and other requisite essential facilities.'
"K. The Negotiating Committee, which met with Mr. Fein to reach an agreement as to his fee, was governed by *261 the initial recommendation of the City Manager for approval to a fee of 6%. The Committee considered the recommendations of the Florida Association of the American Institute of Architects Fee Chart showing compensation to be paid for basic professional services based upon the probable project construction cost. The recommended fee for this project cost was 5.9%. The Court finds that Mr. Fein was motivated in reducing his fee to 4.8% of the construction costs based upon the contemplated Scope of the Work and financial scope of the project.
"L. The Plaintiff Owner did, as demanded by the Contract, provide the Architect with full information as to its requirements for the project. By February 27, 1967, there had been a confirmation of the City's requirements, and the Schematic Design Phase of the Contract was initiated.
"M. On April 6, 1967, the City, having been apprised of the tentative decision of the Republican Party to hold its 1968 Political Convention in Miami Beach if adequate facilities were available, did conclude to move forward with the first phase of its improvements to the Convention facilities, with the designing and building of a `shell.'
* * *"
The City's position is that the documentary evidence introduced by the City shows that at the time of the contract, January 4, 1967, there was no scope of work agreed upon between the parties and that the scope of work was not authorized and defined by the City Council until it adopted the recommendations of the City Manager as set forth in his Council memorandum #494 which limited the scope of the work from an estimated cost of $1,250,000 to $1,875,000 which figures were thereafter necessarily increased to $3,354,000. The City urges that the City Manager by his memorandum #494 advised the Council that it should abandon its unrealistic concept as originally undertaken and to meet the immediate and pressing need for an expanded facility limiting the facility to approximately 125,000 square feet. It is urged that the Council accepted the memorandum and that thereafter Mr. Fein was advised of the action of the City Council. It is then urged that Mr. Fein in a letter dated April 18, 1967, agreed to what was in effect a novation of his contract and to accept in its place an agreement for the City to build under the original contract only the additional work contemplated by the City Manager's memorandum.[2]
The appellee upon the other hand urges that the trial judge correctly found that at the time of the issuance of the City Manager's memorandum there was no abandonment of his original contract. It is urged that at all times the City merely postponed the building of an adequate Convention Hall (which the parties call the "wraparound project"), and that he acceded in the directions to design the "shell type" construction for the immediate purposes of the Republican National Convention. It is *262 urged that the City Manager's memorandum referred to the suggestion that a "shell" be built, minimum in finish and "without accessory requirements until the time that funds become available" and that therefore the project was only currently limited and not abandoned.
The appellant has presented five points on appeal. The first four of these are argued together and in essence they present the same issue, which is whether or not the intent of the parties as expressed by the Council memorandum #494 was to limit appellee's employment under his original contract to his services in connection with the building of the shell. An examination of this record which is both lengthy and complicated, leads us to the conclusion that the City has not demonstrated reversible error. Findings of fact made by a trial judge in a non-jury case not only arrive in this court with a presumption as to their correctness but they will be reversed only upon a holding of the appellate court that the findings are without substantial, competent evidence to support them. See: Cohen v. Mohawk, Inc., Fla. 1962, 137 So.2d 222, 225; Stadler v. Gerry Corporation, Fla.App. 1966, 192 So.2d 299. An appellate court will not reverse findings of fact made by a trial court upon conflicting evidence. Tassinari v. Chaney, Fla.App. 1966, 187 So.2d 376, 379; Central Bank and Trust Company v. Banner, Fla.App. 1963, 157 So.2d 201, 202. The disputed issue as to the extent of appellant's contract under the original contract document and the intention of the parties upon the agreement to proceed with the "shell" project are mixed questions of law and fact to be determined by the trial court upon all of the evidence before the court. Gars v. Woodward, Fla.App. 1968, 214 So.2d 385. We find that the appellant has not shown that the trial court proceeded upon an erroneous understanding of the law. His argument fundamentally is one that a reasonable chancellor could not find as this chancellor found. We have reviewed the record in the light of these contentions and we hold that there is substantial, competent evidence to support the findings of the chancellor. We further fail to find any error in the law applied to the case. We therefore affirm as to appellant's points one through four.
We have examined certain cases from other states passing upon related issues concerning contracts for architectural services. The following cases tend to support the conclusion we reach herein: Tallman v. Town of Marion, 340 Mass. 376, 164 N.E.2d 159 (1960); Impastato v. Senner, La. App. 1966, 190 So.2d 111, application den. 249 La. 833, 191 So.2d 639 (1966).
Appellant's fifth point urges that the trial court having declared the rights of the parties upon the complaint for declaratory judgment has no jurisdiction to try an issue of damages. We hold that that there is no issue for a jury to try and indeed we find in this record no demand for a jury trial. The determination of the amount of the damages was purely arithmetical once the chancellor had made his findings upon the disputed issues of fact. No error is demonstrated under appellant's fifth point. See: Garden Suburbs Golf & Country Club v. Pruitt, 156 Fla. 825, 24 So.2d 898, 170 A.L.R. 1107 (1946); Thomas v. Cilbe, Inc., Fla.App. 1957, 104 So.2d 397.
Affirmed.
CARROLL, J., dissents.
NOTES
[1] The trial judge made a specific finding relative to this fee, it is:

"The recommended fee for this project cost was 5.9%. The Court finds that Mr. Fein was motivated in reducing his fee to 4.8% of the construction costs based upon the contemplated Scope of the Work and financial scope of the project."
[2] This letter from Mr. Fein reads in part, as follows:

"I recognize that up until last week and your Memorandum 494, all of the discussions with the City Council and your office have been calculated to prepare plans for the intended construction of an addition to the Convention facilities at an estimated price of between $8,500,000.00. I understand, too, that with the attack against the resort tax and the delay in the availability of funds, the necessity of reappraising the thinking, at this time, in order to insure such expansion as might be necessary to satisfy the needs of the political conventions. And if this eventually be the final decision of the Council, I recognize `that my contract is subject to the Council's decision and that decision is presently embodied in the adoption of your Memorandum 494.'"
This letter also contains the following:
"I do, of course, understand and accept, naturally, the present change in the contemplated expansion program implicit in your Memorandum 494 and am making all the necessary changes required thereunder."