**In re CHRISTOPHER MICHAELS RISTORANTE, INC., a Florida Corporation, Debtor.**

**Bankruptcy No. 80–01135–BKC–TCB.**

United States Bankruptcy Court, S. D. Florida.

Feb. 13, 1981.

**150**

Angus J. Campbell, West Palm Beach, Fla., for Don Luigi's Ristorante.

Daniel Bakst, West Palm Beach, Fla., for trustee.

Irving Gennet, trustee.

### MEMORANDUM DECISION (TRUSTEE'S ASSUMPTION OF LEASE TO DEBTOR)

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee in this chapter 11 case seeks leave to assume, under 11 U.S.C. § 365, a lease to the debtor of the premises in which the debtor's restaurant was operated until it was closed on June 10, 1980. (C. P. No. 10). The landlord, opposing the motion by a motion to strike, (C. P. No. 12), claims to have terminated the lease in accordance with its terms on August 11 and to have re-let the premises on August 26 to a third party. This was two weeks before bankruptcy. The new tenant has joined in the motion to strike.

The landlord complained of short notice and urged that the trustee must present these issues in the form of an adversary complaint under B.R. 701 rather than as a contested matter under B.R. 914. The hearing on the trustee's motion was continued to give the opposing parties additional time to prepare. They have now withdrawn their procedural objections.

The matter was heard on January 13, 1981. This order incorporates findings and conclusions as authorized by B.R. 752(a).

Resolving the conflicts in the evidence, the essential facts are relatively simple. The lease began on December 1, 1977. It has a five year term with an option to renew for five additional years. The debtor's restaurant closed in June, 1980 because its principal, Woodell, was losing money and faced an operation. He had been trying to sell the restaurant for several years.

Woodell's best prospect during the next three months was Ritz. Woodell thought Ritz would buy the business for enough to pay all creditors and would give Woodell a one-third interest in the new corporate owner. Woodell was so confident (or hopeful) that in August, he gave the key to Ritz and stopped looking for another buyer.

On August 25, Ritz took possession and changed the locks. On August 26, Ritz signed a lease to take the premises over and delivered it to the landlord with checks for $17,335. This covered the unpaid rent, some $14,000, and deposits required by the new lease. However, the landlord did not accept the payment or execute and deliver the lease until September 19. Ritz has since spent $18,000 in refurbishing the restaurant and has been operating the restaurant since November 2, 1980.

Woodell finally realized that Ritz would never buy from him nor include him in the new operation.

By that time, the lease was almost five months in default. The restaurant had been closed since June and the utilities were turned off. On July 9, he had received from the landlord a "Termination Statement" purporting to terminate the lease effective August 11.

In the meantime, Woodell had found another purchaser, Miller. Miller was introduced to the landlord and his attorney on August 27. They found him acceptable and asked for and received a verbal commitment to let Miller have the premises if he

made a good faith deposit of $10,000 within two days, which he did. Miller's proposal, which is still available to the trustee, would provide a net $135,000 to the estate.

Shortly after Ritz changed the locks and before he rehabilitated the premises or incurred any other expense (other than his tender to the landlord) Woodell's attorney protested and advised him that the debtor's leasehold interest had not been terminated.

■ It is the position of the landlord and Ritz that the July 9 Termination Statement terminated the lease effective August 11 pursuant to Article 29 of the lease, which provides:

"If Lessee defaults in performance of any of [the terms of the lease] and the breach continues for more than thirty (30) days after Lessee received written notice thereof, Lessor may at his option: 1. Pursue any legal remedy to recover for the breach and continue the lease in force. 2. Declare the lease forfeited, re-enter the demised premises and remove all persons and Lessee's property therefrom."

I find that a breach of the covenant to pay rent had occurred and had continued for more than 30 days. However, the landlord never gave the tenant written notice of breach before the July 9 Notice was given.

■ The landlord never attempted to pursue his first contractual option. He did attempt to exercise his second option, but without giving the tenant 30 days to cure the breach after written notice of the breach. Article 29 requires two notices: a written notice of default and then, after at least 30 days without a cure of that default, a declaration that the lease is forfeited. Article 34 requires that this declaration also be in writing. It was never made in writing or otherwise. It is basic that forfeiture provisions are not favored and will be construed strictly. *Texas Co. v. Pensacola Maritime Corporation*, 5 Cir. 1922, 279 F. 19, 26. The landlord has not, therefore, effectively exercised his right to terminate the lease in accordance with its provisions. Accord, *Hunt v. Hiland*, Fla.App.1979, 366 So.2d 42.

Also, the landlord never reentered the premises. The actions of the prospective tenant, Ritz, occurred (at least until September 6) under color of his then proposed joint venture with the debtor's principal, Woodell, not as agent for the landlord. The landlord was not a party to these actions in any way.

I believe that Ritz intended almost from the start of his negotiations to lull Woodell into inaction while Ritz obtained the lease, cutting Woodell out entirely. It would be incredible that Woodell did not see through the scheme, but for the fact that Woodell was then so desperate he would clutch at any straw. The landlord was not a party to this deception. He merely wanted his rent and did not really care who it came from.

■ The landlord's resumption of negotiations with Woodell and Miller on August 27 effectively estopped the landlord from claiming that the lease had then been terminated and the premises had already been re-let to another. The landlord did not in fact re-let the premises until September 19, when he deposited Ritz' check and signed a lease with Ritz. At that time, the debtor's lease remained unterminated and the filing of bankruptcy on September 9 stayed any further attempt to terminate the debtor's lease.

The termination clause in the lease gave the landlord other options, but these were not applicable factually. The lease also permitted the landlord to terminate the lease in accordance with applicable local law.

■ Florida law requires the service on the tenant of "... three (3) days notice in writing, requiring the payment of the rent or the possession of the premises..." § 83.20, Florida Statutes. It has long been held in this State that the notice must specify the amount of rent then due. *Deauville Corporation v. Garden Suburbs Golf & Country Club, Inc.*, 5 Cir. 1947, 164 F.2d 430, 432:

"... The above notices, sent by mail, naming no sum as that due and neither

**152**

demanding the rent nor possession, but merely stating an intention to terminate the lease because full rent has not been paid, are insufficient."

It is clear that the landlord did not comply with the requirements of § 83.20.

■ It must follow, therefore, that the lease has not been terminated and the trustee is entitled to assume the lease under 11 U.S.C. § 365(d)(2), provided the trustee:

"(A) cures, or provides adequate assurance that the trustee will promptly cure, such default; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease."

As has been noted, the default to the landlord was cured by Ritz. Ritz is entitled to receive from the trustee compensation for his actual pecuniary loss resulting from the default, which includes at least the amount paid by Ritz to cure the default.

In addition, Ritz may be entitled to compensation for the extent to which he has enhanced the value of the leasehold by leasehold improvements. Under the circumstances here, Ritz is not obliged in equity to account for any profits made during his occupancy of the premises, nor is he entitled to recover rent paid by him since the date of his lease.

To fix the amounts payable to Ritz, a further hearing will be held on Tuesday, March 3, 1981, in Room 329, 701 Clematis Street, West Palm Beach, Florida, at 10:00 a. m. At that hearing, the trustee must also provide adequate assurance of future performances. Without precluding other alternatives, he may accomplish this by presenting a firm, written commitment from Miller to assume the lease accompanied by a deposit sufficient to repay Ritz the amount paid by him to cure the default and by a commitment to close the purchase within 30 days with a firm, written commitment to repay Ritz the enhanced value of the leasehold.