**Tulip Realty Co. v. City Products Corporation**

*Shapiro, Rosenfeld, Stalberg & Cook*, for plaintiff.

*A. John May, Jr.* and *Duane, Morris & Heckscher*, for defendant.

KELLEY, J., November 3, 1961.—

## I.

### Pleadings and Issues

This is an action in equity instituted by plaintiff, Tulip Realty Co., the owner, developer and operator of a shopping center, against City Products Corporation, one of its tenants in the center, to compel it to reopen the variety store in the center and to resume its former operation thereof.

Plaintiff contends that defendant breached an affirmative covenant in the lease to operate the store for the entire term of the lease. On the other hand, defendant maintains that there was no such affirmative covenant and that, in its absence, no injunction should be granted. . .

The pertinent provisions of the lease agreement are as follows:

Article I(b) : The tenant agrees "to use and keep the said premises for the retail sale, storage or display of goods, wares and merchandise commonly sold in retail variety stores in the Philadelphia area . . . and for no other purpose whatsoever" and that it is "the tenant's intention to operate a retail variety store."

Article I(e) : In this subsection, there is spelled out among various acts the happening of which will constitute a default on the part of the tenant, the following:

"(c)  If the premises shall be deserted or abandoned;

"(d)  If business operations for the purpose aforegoing described shall not be conducted therein for

fifteen (15) days after the landlord shall serve written notice of such situation."

Article IV (m) : "The tenant . . . shall open its store for business within six (6) months after the date the store unit to be erected by the landlord is delivered ready for occupancy.

"Tenant shall maintain on the premises a substantial stock of goods, wares and merchandise and equipment, adequate to assure sucessful operation of tenant's business. Tenant shall keep the premises open and available for business activity therein during all usual days and hours for such business in the vicinity and during such periods and hours as are customary in shopping centers. . ."

Plaintiff maintains that, from the above stated provisions of the lease, defendant has undertaken a clear and unmistakeable obligation to operate the variety store for the duration of the lease. With this contention the court cannot agree. Certainly, no such covenant to continuously operate the store can be implied from Article I(b) of the lease. This provision was included to assure plaintiff that a variety store and no other type of store would be operated by defendant.

Nor can such a covenant be implied from the language used in Article I(e) of the lease. This subsection is designed to protect the landlord but in a different way from that suggested by plaintiff. It assures to the landlord the right to terminate the lease and obtain a new tenant if defendant either abandons the premises or if the business is not conducted for the purpose indicated in the lease for 15 days, with the possibility that the new tenant will be able to produce a large sales volume that will generate increased rentals. This subsection was also designed to protect against the situation that arose in Dickey v. Philadelphia Minit-Man Corporation, 377 Pa. 549 (1954). In that case, the Supreme Court held that a covenant to use the prem-

ises for a particular purpose must be expressed in clear and unambiguous language and will not be implied from vague language. Article I(e) (d) of this lease merely spells out specifically that which was lacking in the Dickey case, supra.

Nor can a covenant to continuously operate the variety store be implied from the language used in Article IV(m) of the lease agreement, which provides that the tenant shall open the store for business on a specified date and shall keep a substantial stock of merchandise on hand and keep the premises open and available for business during all usual days and hours that are customary for such business in the vicinity. The purpose of this covenant is to require the tenant to conduct its activities in a businesslike manner. It is intended to do no more than to establish the standards of conduct that defendant must observe *when* its store is in operation.

Our conclusion that this lease does not contain a covenant to operate the store for the entire term of the lease is supported by the fact that the lease agreements between plaintiff and all of the other tenants in the shopping center contain the following sentence which was *omitted* from the lease in the instant case. "Tenant shall, during the term of this lease, *continuously* use the demised premises for the purpose stated in this lease, carrying on therein Tenant's business undertaking diligently, assiduously and energetically." (Italics supplied). We think that the omission of this sentence is an indication that the parties in this case did not intend to impose an obligation to *continuously* use the premises for the duration of the lease upon defendant.

The case of Dover Shopping Center, Inc. v. Cushman's Sons, Inc., 63 N. J. Super. 384 (1960), cannot give plaintiff here any comfort. It is distinguishable from the instant case because there the lease contained an unequivocal provision that the tenant should operate its business for the entire term of the lease.

The variety store has suffered losses in each of its first two years of operation. To require that the business remain in operation despite the prospect of continued financial losses would be to impose an onerous burden upon defendant. In the absence of a specific covenant in the lease to continuously operate the store, we cannot impose such a burden. . .

### Decree Nisi

And now, November 3, 1961, it is ordered and decreed that the preliminary injunction entered on January 6, 1961 be dissolved and that plaintiff's complaint be dismissed. This decree is to become final unless exceptions are filed within 20 days.