HALL, Judge.
Plaintiff, a licensed architect, was employed by defendants in connection with the-renovation and remodeling into a motel of a certain building owned by defendants located at 1001 Chartres Street in the City of New Orleans'. The motel is now being operated by defendants under the name and *113 style of “Chateau Motor Hotel.” Plaintiff, not having received payment for his professional services, brought this suit to collect his fee amounting to $9,521.78 and prayed for interest thereon at the rate of 7% per annum from May 2, 1953 until paid, plus an additional 15% as attorney’s fees. Answering the suit, defendants alleged that dilatory tactics on the part of plaintiff had delayed the completion of the job causing defendants a loss in profits in an amount considerably more than the amount claimed by plaintiff and consequently plaintiff is due nothing.
Following trial on the merits judgment was rendered in plaintiff’s favor for $7,-021.78 with legal interest thereon from date of judicial demand until paid plus 15% of that amount as attorney’s fees. Both parties moved for a new trial (reargument) which was granted. Following reargument the Trial Judge rendered judgment in plaintiff’s favor for $7,021.78 with legal interest thereon from judicial demand until paid. Plaintiff appealed. Defendant answered the appeal praying that the judgment appealed from be reversed and that plaintiff’s suit be dismissed at his cost.
The issues are: (a) whether plaintiff substantially performed his duties under the contract of employment; (b) whether this is a suit on a note or on the employment contract; and, (c) whether defendants are entitled to an off-set against the amount of plaintiff’s fee, and, if so, in what amount.
The following facts are undisputed (except as noted):
In March of 1962 defendants began negotiations for the purchase of the building at 1001 Chartres Street with the idea of transforming it into a motel. Hearing of this, plaintiff contacted defendants and solicited the architectural work on the project. Defendants informed him that they had put all their cash into the purchase of the land but if he would wait until completion of the project to collect his fee, he could have the job. Plaintiff agreed to this. His fee was to be 6% of the contract price. Defendants informed plaintiff that their budget for construction was $150,000.00, and that they hoped to have the motel in operation by January 1963. Plaintiff apparently set to work right away and submitted preliminary plans to the owners sometime in April 1962.
On April 3, 1962 defendants signed an agreement to purchase the building.
In May of 1962 plaintiff had defendants sign a standard form of contract issued by the American Institute of Architects. Notwithstanding the fact that this contract provided for the payment of 25% of the architectural fee of 6% upon completion of preliminary studies and the remaining 75% in monthly installments during preparation of the final plans and specifications, both parties agree that there was never any intention to alter their verbal agreement that payment would be due only on completion and acceptance of the motel.
Plaintiff submitted final plans to defendants on July 16, 1962 and on July 20, 1962 defendants took title to the property. The plans were revised by plaintiff on August 31, 1962 and then submitted to seven contractors allowing three weeks for the submission of bids. Only two bids were received, the lowest of which exceeded defendants’ construction budget by more than $100,000.00.
Mr. Steven G. Benton, d/b/a Tra-Mont Builders was one of the contractors who had been invited to bid but did not do so because in his opinion the plans were insufficient to form a basis for a realistic bid. However, negotiations were thereafter entered into between defendants and Mr. Benton with the view of altering the plans and specifications so that the project could be completed within the $150,000.00 budget limit. Most of these negotiations were conducted between defendants and Mr. Benton although plaintiff was consulted from time to time. The record shows in this connection that the services of an architect were necessary because a City building per *114 mit cannot be secured for renovation work in excess of $50,000.00 unless the plans and specifications are prepared and signed by a duly licensed architect.
Plaintiff’s plans and specifications were finally worked down and the changes and alterations therein were approved and signed by plaintiff. Mr. Benton agreed to do the work for $166,238.00 and a contract therefor was signed by Mr. Benton and the owners on October 15, 1962. The contract provided for substantial completion of the building within 151 days from issuance of the building permit by the City of New Orleans. Plaintiff filed the revised plans and specifications and secured the building permit on October 24, 1962. According to our calculation this meant that the motel should be substantially completed by March 23, 1963, it being testified that the 151 days meant “calendar days”.
On April 2, 1963 seven of the thirty-seven units of the motel were opened and the other thirty units were completed and opened by the end of April. Defendants recorded their acceptance of the building on May 2, 1963.
About the month of September 1962 relations between plaintiff and defendants became strained and by the middle of October when the building contract wás signed the parties were not on speaking terms. All contact between them was through Mr. Benton, the contractor. Sometime in October defendants exhibited to plaintiff an unsigned promissory note payable to his order for $9,974.28, this figure being the full amount of his architectural fee. The proposed note was rejected by plaintiff after consultation with his attorney who advised him that if he accepted the note in payment he would lose his lien on the building. Both parties agree that no part of plaintiff’s fee was to be paid until completion and acceptance of the job. Testimony on the part of defendants is that the note was offered plaintiff in response to plaintiff’s request for security for his fee. Plaintiff on the other hand states that he did not ask for the note nor had he asked security for his fee, and that the idea of the note was a scheme on the part of defendants to destroy his lien rights. However, plaintiff testified that following the note incident he got frightened and did demand security.
According to testimony adduced by defendants, plaintiff threatened, unless security for his fee was forthcoming, to pull his plans off the job and thereby cause the City to revoke the building permit; and that as a matter of fact one day the City did remove the permit from the building, but this was straightened out the same day. Plaintiff denied such threats.
Plowever negotiations looking toward the furnishing of security continued until on December 6, 1962 defendants secured plaintiff’s fee by putting a second mortgage note in escrow with the National Bank of Commerce and entering into an escrow agreement with plaintiff and the bank. The second mortgage note is in the principal sum of $9,521.78, is payable in certain installments and contains an acceleration clause. It bears interest at the rate of 7% per an-num from maturity until paid and 15% attorney’s fees in the event it “should be placed in the hands of an attorney for collection.”
The escrow agreement recites that defendants had agreed to pay plaintiff for his services, the sum of $9,974.28; that after deduction of certain amounts there remains due to plaintiff a balance of $9,521.78, payable after all of plaintiff’s services have been performed; that as security for this sum defendants have delivered to the National Bank of Commerce, as escrowee, the second mortgage note which we have here-inabove described; that regardless of the maturity stated in said note, same shall not become due until completion and acceptance of the Chateau Motor Hotel job. The escrow agreement further provided that the note was to be returned to defendants upon proof of full payment of plaintiff’s fee, but if after completion and acceptance of the Chateau Motor Hotel job the plain *115 tiff’s services have been deemed satisfactory “under the provisions of paragraph 8 hereof” the note shall he delivered to plaintiff.
Paragraph 8 of the escrow agreement reads as follows:
“8. Within ten days after the date of acceptance of the Chateau Motor Hotel job, Owners shall notify Architect and Escrowee, in writing, whether or not Architect’s services have been performed to their satisfaction; and in the event no such written notice is given to the Architect and Escrowee, Architect’s satisfactory performance of his services shall be conclusively presumed. In the event Owners shall notify Architect and Es-crowee, within said ten day period, that Architect’s services have not been satisfactorily performed, Escrowee shall hold said note, or the proceeds thereof, subject to the order of the Owners and Architect, acting in concert, or, in the absence 'of such order, subject to the order of Arbitrators appointed under the Arbitration clause of the Agreement between Owners and Architect dated in May, 1962. Es-crowee shall be entitled to rely upon such order of Arbitrators, and shall be under no obligation to question the formation of the Arbitration committee, its proceedings or its findings.” (Emphasis supplied.)
The Chateau Motor Hotel job was accepted by defendants on May 2, 1963. Within ten days thereafter, to wit, on May 9, 1963 defendants gave written notice to the escrowee and to plaintiff in accordance with paragraph 8 of the escrow agreement that “the architect’s services have not been satisfactorily performed.” As required by said paragraph 8 the National Bank of Commerce, escrowee, retained possession of the note pending the result of arbitration.
Plaintiff filed this suit on June 20, 1963. On January 7, 1964, prior to answer being filed, the parties entered into a written stipulation waiving all rights to arbitration and agreeing to proceed with the suit as if there were no applicable provisions or rights of arbitration.
(a)
The Trial Judge stated in his written “Reasons for Judgment” that he did not have any doubt that plaintiff had “ * * * fulfilled the basic requirements of an architect for his fee * * * ” The record fully supports this finding.
(b)
The Trial Judge went on to say that plaintiff “ * * * is entitled to collect under the terms and conditions of the escrow agreement * * * , ” and in rendering his first judgment he apparently attempted to allow plaintiff interest and attorney’s fees in accordance with the provisions of the note. However, after rehearing'the case he allowed plaintiff only legal interest from judicial demand.
Plaintiff contends that he is entitled to the 7% interest and 15% attorney’s fees provided in the escrowed note, thereby contending in effect that this is a suit on the note.
But it is too plain to admit of argument that this is nothing but a suit on plaintiff’s contract for architectural services. Nowhere in plaintiff’s petition does he allege that he is the owner of the note, that he is-the holder of the note, or that he has any right or cause of action to sue on the note. Besides this plaintiff’s attorney stated at page 196 of the transcript: “Whether it was or wasn’t is hardly relevant to the contract in this case. We are suing on a contract.”
Moreover plaintiff is not the holder of the note. It has never been in his possession. It it still held by the National Bank of Commerce under the provisions of para *116 graph 8 of the escrow agreement, and the bank was not made a party to these proceedings. No one but the holder of a promissory note may sue thereon (see LSA-R.S. 7:51), “holder” being defined as “ * * * the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof.” (See LSA-R.S. 7:191).
Since this is a suit on the contract for services and not on the note plaintiff is not entitled to more than legal interest on his claim and is not entitled to any attorney’s fees.
(c)
The Trial Judge found that plaintiff was guilty of dilatory tactics in the performance of his services which caused a delay in the completion of the job, and for this reason allowed defendants a $2,500.00 set-off against plaintiffs claim.
On this subject the Trial Judge stated:
^ * * I find as a matter of fact that, during the period of negotiations which stretch from early October into the time of signing the escrow agreement, plaintiff deliberately held up work, on the job. The job was eventually completed about a month and a half later than the date given in the building contract. Not all of the delay in the completion of the job was caused by the obstruction tactics of plaintiff, however * * • * Admittedly, since it can not be exactly determined how much of the delay in the completion of construction was caused by plaintiff, or exactly how much was lost by defendants as a result of this delay, I do not feel that I would be doing substantial justice if I were to allow plaintiff to benefit from his own misconduct. I believe the evidence justifies a set-off of $2,500.00 in favor of defendants against the amount due * *
Plaintiff contends that he did nothing which caused a delay in the completion of the job and therefore contends that the Trial Judge erred in allowing defendants any amount as a set-off. Defendants contend that they have been damaged to an extent greater than plaintiff’s claim and therefore the judgment in plaintiff’s favor should be reversed.
Defendants contend that plaintiff is responsible for the delay occasioned by the necessity of having to alter the plans and specifications in order to bring the cost down closer to defendants’ construction budget; that another delay was caused by plaintiff’s failure timely to approve the shop plans for mill work, and to plaintiff’s threat to pull his plans off of the job.
The record shows that it is not unusual to receive bids in excess of the architect’s estimates, nor in such cases is it unusual to try to negotiate a contract by altering the plans and specifications to bring the cost within the owner’s budget.
The “A.I.A.” form of contract signed by the parties provides that the architect does not guarantee his estimate of the cost of the job. In view of this provision, we are of the opinion that if the cost, as reflected by the bids, exceeds the cost limitation agreed upon between the owner and architect, the owner, while having the right to reject the architect’s plans (without payment of his fee) would have no right to damages for any delay caused thereby. Instead of rejecting plaintiff’s plans, defendants elected to negotiate with Mr. Benton, using plaintiff’s plans and specifications as a basis. We are of the opinion that defendants are not entitled to a set-off for any delay caused by these negotiations. Whether or not plaintiff threatened to pull his plans off the job is immaterial. He did not do so and consequently no delay was caused thereby.
But the record shows that during the time he was endeavoring to force defendants to give security for his fee plaintiff deliberately delayed approval of the shop drawings for the mill work. Mr. Benton testified that the trouble concerning the *117 shop drawings began about the middle of November 1962 and lasted for about a month and a half, but said that not all of the delay in the mill work was due to plaintiff’s late approval of the shop drawings, some of the delay being caused by the shop not turning out the work on time and by the necessity of having some of the mill work reworked, a condition not attributable to plaintiff. He estimated that the “actual delay in the job” attributable to plaintiff’s failure to approve the shop drawings timely was “approximately one month.”
However there is nothing in the record to show that work on the project was at any time halted on account of plaintiff’s actions. And the record shows that there were delays occasioned by the late arrival of air-conditioning equipment, the arrival of cracked lavatories, and a delay caused by a freeze. The final completion of the' job was delayed approximately a month, but it is impossible from the record not only to determine what part of this delay was due to plaintiff’s late approval of the shop drawings but it is impossible for us to determine definitely that any of the delay in final completion was caused thereby.
While plaintiff’s actions with respect to the shop drawings can not be condoned, defendants in our opinion are not entitled to set-off against the amount of plaintiff’s fee any loss of profits they may have sustained by the delayed opening of the motel, absent proof that plaintiff’s actions were the cause or contributed to this delay. Defendants bore the burden of proof in this respect and we are not satisfied that they have sustained it.
For the foregoing reasons the judgment appealed from is amended by increasing the amount awarded plaintiff from $7,021.-78 to the sum of $9,521.78 and as so amended and in all other respects, the judgment appealed from is affirmed, costs of this appeal to be borne by defendants-appellees.
Amended and affirmed.