139 So.2d 150 (1962)
Jeanette L. STEMMLER, Gertrude L. Giavani and Elsbeth Levy, As Trustees under That Certain Revocable Deed of Trust Bearing Date September 26, 1958, and Appearing of Record in Deed Book 235, at Page 85, of the Public Records in the Office of the Clerk of the Circuit Court of Leon County, Florida; and Sara Levy, a Widow, and James Messer (Also Known As James Messer, Jr.), William A. Levy and Elsbeth Levy, As Trustees of the Estate of Elsa Kraus Levy, Deceased, Appellants,
v.
MOON JEWELRY COMPANY, Inc., a Corporation Organized and Existing under the Laws of the State of Florida, Appellee.
No. C-352.
District Court of Appeal of Florida. First District.
March 27, 1962.
Rehearing Denied April 12, 1962.
*151 James Messer, Jr., Tallahassee, for appellants.
Horne & Rhodes, Tallahassee, for appellee.
RAWLS, Judge.
Jeanette L. Stemmler, et al, appellant-plaintiff, by suit in equity sought a declaratory decree against Moon Jewelry Co., Inc., appellee-defendant, for construction of a lease. From a decree on the pleadings in favor of defendant, plaintiff has appealed.
The gist of this action is founded upon plaintiff's contention that the lease between the parties contained an implied covenant requiring defendant to operate a jewelry business on the leasehold premises during the entire period of the lease, which operation would have substantially increased the rentals accruing to plaintiffs.
Plaintiffs leased to the defendant for a period of five years a building in Tallahassee, Florida, for the use of which defendant agreed to pay rent in the amount of $500.00 per month and in addition to the monthly rentals, a sum equal to five per cent of the amount by which the gross receipts of the defendant's business exceeded $120,000 during each fiscal year of the lease. Defendant gave plaintiffs written notice more than two years prior to expiration of the lease that it had decided to construct its own building and contemplated occupying same near the end of the year. On November 10, 1959, approximately one and a half years prior to expiration of the lease, the defendant removed its business from the leased premises, recognized its obligation to continue to pay the monthly rental of $500.00, but offered, if the plaintiffs desired, to cancel the lease, provided any new tenant was not engaged in a business relating to that of defendant. Plaintiffs declined to cancel the lease and maintained that defendant was obligated to pay, for the remainder of the leasehold term, in addition to the $500.00 per month base rent, an amount approximating the sum they would have received if defendant had continued to operate its business on the leased premises.
Salient provisions of the lease are:
1. "That the lessors * * * do hereby demise and let unto the said lessee and the lessee does hereby take and hire from the lessors the following described premises * * * [description of property] * * * for the sole uninterrupted use and occupation of said premises by the lessee for the operation of a retail jewelry store * * *"
2. "The lessee hereby has the privilege, when it vacates the store, or at any time during the continuance of this lease, to remove any or all store fixtures, counters, shelving, show cases, mirrors, slides, furnace, radiators or movable fixtures it may have put in or installed in said premises at its own expense."
The lease under consideration is artfully drawn, containing clear and concise affirmative and negative covenants made by each party. This instrument is not ambiguous, contradictory or impossible of interpretation without supplementary extrinsic evidence. The plaintiff, in express language, demised the premises to the defendant for a period of years and assured the defendant that it would have the uninterrupted use and occupation of said premises for said period for the operation of a retail jewelry store. The defendant did not covenant to operate a jewelry store; it did not covenant "to use its best efforts to obtain the highest and best volume of business", "or to remain open the year round" or make any covenant of similar import. If, as plaintiff asserts, "the prime and moving consideration *152 for the lease was the total amount of rental which the plaintiff might expect from the lease" then, it was incumbent upon plaintiffs to have so written in the lease, rather than ask this Court to insert such a covenant for them under the doctrine of an implied covenant. As stated by Mr. Justice Mathews in Ridgefield Investors:[1] "If the parties so intended they should have used clearer words to express their intention. The court cannot re-write the lease for them."
The second portion of the lease verbiage set out above overwhelmingly rebuts plaintiff's contention of an implied covenant. The able Chancellor went to the crux of this case in his final order wherein he stated:
"Were it necessary, in order to decide this case, this Court would reject those decisions from other states which would find in written leases, in which the parties had carefully reduced their agreements to writing, obligations not mentioned in any way in the leases. The Court would adhere to the principle that when the parties enter into a written contract the law will presume that they knew what they were doing and placed in the contract all of their obligations with respect to the subject matter.
"But it is not necessary to go so far in this case. The theory of the decisions upon which Plaintiffs rely is that there is an implied agreement on the part of the lessee to continue to operate this business in the leased premises. But the lease in this case repels any such presumption. It is expressly provided that: `The Lessee hereby has the privilege, when it vacates the store, or at any time during the continuance of this lease, to remove any or all store fixtures, counters, shelving, show cases, mirrors, slides, furnace, radiators or any movable fixtures it may have put in or installed in said premises at its own expense.' The right `at any time' to remove `all' fixtures, counters, shelving, show cases, etc., from the leased premises is entirely inconsistent with the idea that there is an implied agreement to continue to operate a jewelry business, to which such items are essential, in the leased premises."
Garden Suburbs[2] is cited by plaintiff as authority from this jurisdiction for reversal of the Chancellor's findings. There, the Chancellor was concerned with the construction of several paragraphs of a lengthy lease which were to some extent ambiguous and contradictory, the key issue being an ascertainment of the intention of the parties as to the right of lessee to sublet and the computation of the gross to which percentage rentals were to be computed. We do not find this case to be applicable to the instant cause for the Court was concerned with construing affirmative covenants made by each party.
Plaintiffs next rely on the case of Mayfair[3] which concerned a lease on a theatre building with rental payments based on fixed installments and a percentage of the gross. The lessee closed the theatre for approximately four months during one year, thereby substantially reducing the lessor's rental income from the premises. The Chancellor found that the lease required lessee to operate the premises continuously during the term. In affirming the Chancellor, the Supreme Court found that the terms of the lease did not authorize closing the theatre at any time but required the defendant to "use [its] best efforts to obtain and maintain the highest volume of business on the premises." It is apparent *153 that the decision is based upon and is applicable to a specific affirmative covenant on the part of the lessee and as pointed out above, such a covenant giving rise to any implication is glaringly absent in the instant lease.
The rules of construction relating to contracts generally apply in the construction of a lease.[4] The logical and rational approach in interpreting an agreement between parties is to read what is written  not attempt to read into the written instrument what might have been left out. As succinctly stated by Mr. Justice Thornal in Gendzier:[5]
"The writing itself is the evidence of what they meant or intended by signing it. The test of the meaning and intention of the parties is the content of the written document."
And Judge Shannon quoting American Jurisprudence in Azalea Park Utilities, Inc.[6] laid down the rule we find applicable to the instant lease:
"The absence of a provision from a contract is evidence of an intention to exclude it rather than of an intention to include it."
The writing itself being silent as to any affirmative covenant made by defendant to operate a jewelry business on the leased premises and containing an express covenant by plaintiff permitting defendant during the period of the lease to at any time move any or all of the fixtures, we find to be unambiguous and complete and to negate any theory of an implied covenant on the part of defendant to operate its business during the entire period of the lease.
Accordingly, the Chancellor's decree is affirmed.
CARROLL, DONALD K., C.J., and WIGGINTON, J., concur.
NOTES
[1] Ridgefield Investors v. Mae Ellen, Inc., 57 So.2d 842, 844 (Fla. 1952).
[2] Garden Suburbs Golf and Country Club v. Pruitt, 156 Fla. 825, 24 So.2d 898, 170 A.L.R. 1107.
[3] Mayfair Operating Corporation v. Bessemer Properties, Inc., 150 Fla. 132, 7 So.2d 342 (1942).
[4] 51 C.J.S. Landlord and Tenant § 232a, p. 849.
[5] Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla. 1957).
[6] Azalea Park Utilities, Inc. v. Knox-Florida Development Corporation, 127 So.2d 121, 123 (Fla.App. 1961); 12 Am. Jur., Contracts, § 239.