400 So.2d 1316 (1981)
JERRICO, INC., a Kentucky Corporation, Appellant,
v.
WASHINGTON NATIONAL INSURANCE COMPANY, an Illinois Corporation, Appellee.
Nos. 80-927 to 80-929, 80-1119.
District Court of Appeal of Florida, Fifth District.
July 15, 1981.
*1317 Richard H. Adams, Jr., and Scott D. Clark of Gray, Adams, Harris & Robinson, P.A., Orlando, for appellant.
Timothy J. Manor and Alice Blackwell White, of Lowndes, Drosdick, Doster & Kantor, P.A., Orlando, for appellee.
ORFINGER, Judge.
The principal issue on this appeal is the correctness of the trial court's ruling that appellant was required to operate a restaurant on the premises leased by it during the term of the lease. Appellant also claims error in the award of damages to appellee, in the denial of its motion for new trial based on "newly discovered evidence," and in the amount of attorney fees awarded to appellee. We affirm on all issues.
The case was tried essentially on stipulated facts and revolves around the interpretation of a written lease between appellant as tenant and appellee's predecessor in title as landlord. The lease required the landlord to construct on its motel and racquet club complex, at a cost not to exceed $275,000, two restaurants and a cocktail lounge, all of which would be operated by the tenant.
Of the two restaurants contemplated by the lease, one was a fast order coffee shop, known as "Jerry's Restaurant," and the second was a first class, high quality restaurant with an upgraded gourmet menu, known as the "Governor's Table." Although the menus were different, both restaurants operated out of the same kitchen.[1] Rent to the landlord during the ten-year term was to be 5% of the gross receipts of Jerry's Restaurant, 6% of the gross receipts of the Governor's Table, and 7% of the sale of alcoholic beverages, against a minimum annual rent of $8,000, plus 11% annually of the cost to the landlord of constructing the facilities. Except for some minor exceptions, appellant had the exclusive right to sell food and beverages at the motel complex. Appellant has continuously operated Jerry's Restaurant during the lease term, but it closed the Governor's Table restaurant on July 1, 1975, because of poor business, reopened it for a few months in 1979, then closed it again and it has since remained closed and vacant despite appellee's demand that it be reopened. Appellee says that closing the Governor's Table is a breach of the lease because no percentage of receipts inures from a closed restaurant. Appellant says it is not obligated by the lease to operate the Governor's Table[2] and that so long as it pays at least the minimum rent, it has not breached the lease.
The general rule seems to be that in the absence of a specific provision therefor, the lessee is under no obligation to occupy or use the leased premises for the purpose for which they are adapted and that a covenant granting the privilege to use the premises for a particular purpose or prohibiting its use for other purposes does not necessarily involve an obligation on the part of the tenant to use it for that purpose. Floste Corp. v. Marlemes, 53 So.2d 538 (Fla. 1951).[3] The Floste court distinguished that case from those where the obligation to continue the operation of a business was implied because the amount of the rental was materially dependent on such operation and where the continued operation was required to vitalize the full intent of the parties to the lease. Mayfair Operating Corporation v. Bessemer Properties, 150 Fla. 132, 7 So.2d 342 (1942); Lincoln Tower Corporation v. Richter's Jewelry Company, 152 Fla. 542, 12 So.2d 452 (1943).
Appellant relies on Diltz v. J & M Corp., 381 So.2d 272 (Fla. 3d DCA 1980), and Stemmler v. Moon Jewelry Company, Inc., *1318 139 So.2d 150 (Fla. 1st DCA 1962), for the proposition that a rental based on a percentage of receipts does not imply a covenant to operate the business where there is a substantial guaranteed rental. In Diltz, the court found nothing in the lease similar to the requirement in Mayfair that the lessee use its best efforts to maintain the highest volume of business on the premises, and therefore held that there was no requirement to operate the business during the four-month period remaining on that lease. In Stemmler, the court not only noticed the absence of a similar "best efforts" clause, and found no requirement to "remain open the year around," but pointed to a provision in the lease which gave the lessee the right, at any time, to remove its fixtures, counters, shelves, showcases, etc., from the premises. This right, said the Stemmler court, was entirely inconsistent with the idea that there was a covenant to operate the tenant's jewelry business, to which operation these items were essential.
The facts here are unlike Diltz and Stemmler. The subject lease contemplated the operation of both restaurants.[4] The lease says in its preamble that each party will cooperate with the other to the fullest extent practicable in the promotion of a satisfactory and mutually profitable conduct of both ventures [the landlord's motel and the tenant's restaurants and cocktail lounge]. The lease requires the restaurants to be open for business every day of the year during the lease term from the hours of 7:00 A.M. to 11:00 P.M. and provide satisfactory food service. At the end of each lease year, the tenant is required to furnish to landlord a verified statement showing in detail the gross receipts for each month of the preceding year of Jerry's Restaurant and a similar monthly breakdown of the gross receipts of the Governor's Table restaurant. There are other provisions in the lease which, when read in conjunction with those mentioned here, give substance to the conclusion of the trial judge that a proper construction of the lease was that the parties thereto intended the continued operation of both restaurants. One such provision pointed out by the trial court was that the rent for Governor's Table was 6% of receipts, whereas rent for Jerry's was only 5% of receipts. We think Mayfair and Lincoln Tower control here. Appellant fails to overcome the presumption of correctness which follows the trial court's interpretation of the lease terms.
Appellant's contention that the damages awarded were based on speculation is without merit.
Although it is required that the damages claimed be certain and not left to speculation and conjecture, it is evident that the damages recoverable nearly always involve some uncertainty. Consequently, the rule is that the damages claimed must be capable of ascertainment with only a reasonable degree of certainty. It is sufficient that there be a reasonable basis of computation. Damages are not rendered uncertain so as to prevent their recovery because they cannot be calculated with absolute exactness. It is enough that the results be only approximate.
Mere difficulty in the assessment of damages is not a sufficient reason for denying their recovery where the right to them has been established. Moreover, a defendant whose wrongful act creates the difficulty is not entitled to complain that the amount of the damages cannot be accurately fixed.
17 Fla.Jur.2d, Damages, § 18 (1980). The trial court used the past history of the Governor's Table restaurant, good months and bad, to determine the accrued damages, and we find no abuse of discretion.
After the final judgment had been entered, new counsel appeared for appellant and they filed on behalf of appellant various post-trial motions which were subsequently denied. Appellant contends that the trial court erred in holding that its "motion for relief from judgment" on newly *1319 discovered evidence would be denied because appellant failed to show that the evidence was not previously available to it by the exercise of due diligence. Based on conflicting evidence, the trial court found that the "newly discovered evidence" was available to appellant and was either known to it or could have been known to it by the exercise of due diligence. This "new evidence" involved a claim that appellee had itself breached the lease by openly selling alcoholic beverages at the racquet club for a long period of time, contrary to appellant's exclusive right to do so. The trial court took testimony on this specific issue and concluded that this information was known or was readily available to appellant prior to trial. We cannot say that the court erred in so finding.
Appellant argues that "due diligence" is not required in this instance because the motion was filed under Florida Rule of Civil Procedure 1.530 as well as under Rule 1.540, and relies on Kash N'Karry Wholesale Supermarkets, Inc. v. Garcia, 221 So.2d 786 (Fla. 2d DCA 1969), as authority for the proposition that while due diligence is required under the latter rule, it is not a requirement under the former.[5] We do not read that case to support the proposition asserted. The Kash N'Karry court said that "almost any additional evidence, whether newly discovered or not, is sufficient for relief on a timely motion for rehearing of a summary judgment. ..." We do not read this case as supporting the proposition that after a trial on the merits, a new trial on the ground of newly discovered evidence can be obtained under either rule in the absence of a showing that the movant could not with due diligence have discovered such evidence and presented it at the trial, nor could we support such interpretation.
The general rule is that courts should look with disfavor upon applications for a new trial upon the ground of newly discovered evidence, because to look with favor upon such proceedings would bring about a looseness in practice and encourage counsel to neglect to gather all available evidence for a first trial by speculating upon the verdict, and then, being defeated, become for the first time duly diligent in securing other evidence to cure the defects or omissions in their showing upon the first trial.
Vining v. American Bakeries Co., 121 Fla. 116, 163 So. 396 (1935). See also Albrecht v. City of Hollywood, 157 So.2d 839 (Fla. 2d DCA 1963).[6]
Appellant's contention that attorney's fees awarded to appellee by the trial court are excessive is without merit. There was adequate evidence presented by appellee to support the fee provided for in the lease, and appellant offered no evidence in opposition. Since the award is supported by the evidence, we find no abuse of discretion.
The final judgment and the post-trial orders appealed from are
AFFIRMED.
COBB and SHARP, JJ., concur.
NOTES
[1] The restaurants are thus described in the stipulated statement.
[2] Appellant recognizes its continuing obligation to operate Jerry's Restaurant, and extended the hours of its operation when it closed the Governor's Table. It is difficult to follow its reasoning, however, because the same provisions of the lease apply to both restaurants.
[3] Although not specifically mentioned in Floste, it appears that the fixed monthly rent was being paid even though the tenant was not operating the movie theatre, and that no percentage rent was involved.
[4] Stipulation of Facts: "The lease contemplated the operation by Jerrico of a certain coffee shop (Jerry's Restaurant), a Governor's Table Restaurant and a cocktail lounge in the subject motel."
[5] The "Motion for Relief From Judgment" was filed within ten days after the entry of the judgment, cited both rules, but did not distinguish them. No affidavit was filed with the motion, but asserted that one would be filed later. The trial court commented that the affidavit was required to be filed with the motion [Rule 1.530(c)], but did not base his ruling on this omission. We therefore do not pass on this interpretation.
[6] Counsel representing appellant on appeal were not counsel at trial.