# Third District Court of Appeal

## State of Florida

Opinion filed June 24, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3135
Lower Tribunal No. 14-13468
_____


**Double Park, LLC,**
Appellant,

vs.

**Kaine Parking 125, LLC., a Florida Limited Liability Company**
Appellee.


A non-final appeal from the Circuit Court for Miami-Dade County, Gisela Cardonne Ely, Judge.

John B. Rosenquest, IV, for appellant.

Simon, Schindler & Sandberg, and Roger Schindler, for appellee.


Before WELLS, EMAS and LOGUE, JJ.

WELLS, Judge.

In this action arising out of a landlord-tenant dispute, Double Park, LLC, the plaintiff/counter-defendant below, appeals from a non-final order directing it to

place disputed excess rent money in escrow pursuant to section 83.232 of the Florida Statutes (2014).  Finding we have jurisdiction to review the matter, see Fla. Discount Props., Inc. v. Windermere Condo., Inc., 763 So. 2d 1084, 1084 (Fla. 4th DCA 1999) (holding that an order directing rent money be paid into the registry of the court is appealable under Florida Appellate Rule 9.130(a)(3)(C)(ii) "because it determines the right to immediate possession of property, i.e., the rent payments"), we reverse the order under review because the trial court erred in determining without an evidentiary hearing the amount of excess rent that must be placed in escrow under this lease.  See Cascella v. Canaveral Port Auth., 827 So. 2d 308, 309 (Fla. 5th DCA 2002) (applying de novo review to non-final order determining rent obligation under parties' lease for purposes of section 832.232 of the Florida Statutes "[b]ecause the appeal involves issues of contract and statutory interpretation").

    *1. The facts*

In March 2008, Double Park entered into an agreement to lease a parking lot from Kaine Parking 125, LLC.  The subject lease is titled and provides that it is a "TRIPLE NET LEASE AGREEMENT."  See Hochhauser v. Jacobson, 795 So. 2d 232, 234 n.1 (Fla. 4th DCA 2001) (explaining that "[u]nder a triple net lease, the tenant is obligated to pay all taxes, insurance and cost of maintenance on the leased premises").  To this end, the subject lease expressly provides that Double Park "at

2

its expense and as additional rent" is to secure certain "all risk" property insurance and liability insurance policies, and that, as an "Increase in Rent," Double Park is responsible for paying one half of the real estate taxes, up to $35,000 per year[1], on the leased premises. The lease further provides that, as a triple net lease, Double Park is responsible for the cost of all maintenance on the premises, utilities, and certain capital improvements.[2]

Paragraph 17(d) of the lease agreement further provides that if Double Park sublets the property and collects rental income greater than the payments it currently makes to Kaine Parking, then Double Park's rent obligation under the lease increases to the amount being paid by its sublessee:

> (d) Any monetary consideration obtained (net of selling costs and expenses) in connection with the transfer or assignment of this Lease or received by the sublessor in connection with a sublease of the premises shall belong to the Landlord. In the event of the subletting or assignment of this Lease, if Tenant derives funds or rental income greater than **what it is paying to Landlord** under this Lease, the Annual Rent provided for herein shall be increased to that amount received by Tenant from sublessee or assignee of this Lease.

(Emphasis added).

---

[1] The subject lease originally made the landlord, Kaine Parking, responsible for the payment of real estate taxes. However, pursuant to a November 14, 2012, amendment to the lease, Double Park is responsible for paying one-half of the real estate taxes on the subject property up to a total of $35,000 in any given year.

[2] In addition to being responsible for "alterations, changes, substitutions, improvements and construction in connection with the Premises," Double Park agreed to provide $100,000 to refurbish the parking lot, payable in installments of $2,500 per month.

After Double Park sublet the property to 120 Ocean Drive, Kaine Parking complained that Double Park had not received permission to sublet any portion of the leased property. It also claimed that, pursuant to paragraph 17(d), Double Park's annual rent under the lease had increased because Double Park allegedly was collecting more from its sublessee than Double Park was paying to Kaine Parking under the lease. Double Park then sued Kaine Parking for breach of contract with Kaine Parking countersuing to demand payment of the excess rental income that Double Park had not paid since the inception of the sublease.[3]

Kaine Parking thereafter moved to require Double Park to deposit unpaid excess rental income into the court registry claiming that the amount the sublessee was paying to Double Park each month ($26,000 or $31,000, depending on the date) was greater than the rent Double Park allegedly was paying to Kaine Parking each month ($22,000, $23,100, or $24,255 per month, depending on the date). Double Park balked, claiming that its rent obligation under the lease should not be increased because the amount it paid to Kaine Parking pursuant to its triple net lease each month, when considering insurance, maintenance, taxes, utilities and capital improvements, far exceeded the rent Double Park collected from the sublessee, and requested an evidentiary hearing to determine the proper amount of excess rent to be paid into the court registry. See § 83.232(2)(b), Fla. Stat. (2014)

---

[3] Kaine Parking also sought to evict Double Park and the sublessee from the parking lot premises.

4

(providing that "[i]f the tenant contests the amount of money to be placed into the court registry, any hearing regarding such dispute shall be limited to only the factual or legal issues concerning . . . [w]hat properly constitutes rent under the provisions of the lease"); Muvico Entm't, L.L.C. v. Pointe Orlando Dev. Co., 755 So. 2d 194, 194 (Fla. 5th DCA 2000) ("[S]ubsection 83.232(2), Florida Statutes (1999), specifically provides that if the tenant contests the amount of money to be paid into the court registry, the court is limited to factual and legal issues concerning what constitutes rent under the lease agreement and whether the tenant is due any credits for rent that has been paid.").

At a non-evidentiary hearing which followed, the court below determined that Double Park was obligated to deposit an amount equal to the difference between the gross rent collected each month by Double Park from 120 Ocean Drive (either $31,000 or $26,000 per month, depending on the date) and the base or annual rent paid by Double Park to Kaine Parking each month (either $22,000, $23,100 or $24,255 per month, depending on the date).[4]  Double Park appeals claiming that this method for determining whether additional or excess rent was due was error.  We agree.

---

[4] Pursuant to agreement of the parties, the court ordered that this sum be placed in escrow in the trust account of counsel for Kaine Parking instead of the court registry.

5

As an initial point, we reject Kaine Parking's argument that Double Park waived its right to appeal the trial court's excess rent determination when it failed to take advantage of the trial court's offer to consider the matter at a subsequent evidentiary hearing. We do so because that offer amounted to no offer at all, where the court had already issued its legal ruling, making it clear that it would consider only the base monthly rental fee Double Park was obligated to pay Kaine Parking when calculating the excess rental income under paragraph 17(d) and that nothing introduced at the evidentiary hearing was going to change the court's mind as to this point. The court even went so far as to state that if Double Park elected to proceed with an evidentiary hearing it would impose sanctions against Double Park if it did not secure a more favorable ruling. Such a Hobson's choice amounted to no choice at all. Thus, no voluntary waiver that would preclude consideration by this court occurred. See Marcos v. Haecker, 915 So. 2d 703, 705 n.1 (Fla. 3d DCA 2005) (citing Anderson v. Highlands Beach Dev. Corp., 447 So. 2d 1045, 1046 (Fla. 4th DCA 1984) (defining Hobson's choice as "an apparent freedom of choice with no real alternative")).

As to the merits, we agree that a triple net lease such as the instant lease between Kaine Parking and Double Park generally "assures that the landlord will actually receive the lease's stated profits," that is, an amount—here the base or annual rent—"net" of the cost of "taxes, operating expenses, and the like." In re

McSheridan, 184 B.R. 91, 94 n.2 (B.A.P. 9th Cir. 1995), overruled on other grounds by In re El Toro Materials Co., 504 F. 3d 978, 981-982 (9th Cir. 2007). However, the instant appeal does not turn on what constitutes "rent" under a triple net lease. Rather, this appeal hinges on whether Double Park must pay anything to Kaine Parking as a consequence of its sublease to 120 Ocean Drive. This determination is governed by paragraph 17(d) of the parties' lease, whereby Double Park's rent obligation under the lease increases if Double Park collects more in rental income from its sublessee than "it is paying" to Kaine Parking. See Stemmler v. Moon Jewelry Co., 139 So. 2d 150, 153 (Fla. 1st DCA 1962) ("The rules of construction relating to contracts generally apply in the construction of a lease."); see also In re Phillip Watts Enters., Inc., 186 B.R. 735, 738 (Bkrtcy. N.D. Fla. 1995) ("In Florida, the general rules of contract construction apply to the construction of a commercial lease contract. 'It is a cardinal rule of contract construction that the intention of the parties governs.' Dune I, Inc. v. Palms North Owners Ass'n, Inc., 605 So. 2d 903, 905 (Fla. App. 1 Dist. 1992). The intention of parties to a contract is to be obtained from the unambiguous terms of the contract.") (citation omitted). Because Double Park has always paid the base rent under the lease (either $22,000, $23,100, or $24,255 per months depending on the date), we are concerned only with any additional or excess rental income Double

7

Park may owe to Kaine Parking as a consequence of the Double Park/120 Ocean Drive sublease.

In light of the trial court's failure to hold an evidentiary hearing, the trial court could not resolve the disputed factual issue of whether Double Park "is paying to the Landlord" more than just annual rent. The parties' lease agreement provides, for example, that Double Park is required to pay $2,500 each month for its share of the cost of refurbishing the parking lot. Double Park is also required under the lease to pay for its share of the real estate taxes assessed on this property. Under paragraph 17(d), if Double Park makes these payments directly to Kaine Parking it would appear that these amounts should have been added to the monthly rent being paid to Kaine Parking when calculating whether Double Park was receiving more from 120 Ocean Drive than it was paying to Kaine Parking, and if so, the amount of excess rent due. Because the trial court failed to hold an evidentiary hearing to resolve these and any other factual disputes prior to determining the amount of excess rent, if any, to be escrowed, we reverse the order on appeal.[5]

---

[5] Double Park's counsel represented at the non-evidentiary hearing held below that Double Park's monthly payments for the refurbishment cost and for taxes have been made to Kaine Parking. Such representations are not testimony; therefore, on remand, Double Park will have the opportunity to validate these claims by introducing evidence at an evidentiary hearing.

Double Park also claims that the $450 per month it was paying for maintenance, the $568.67 per month it was paying for utilities, and the $592.33 per month it was paying for insurance also should have been added to "what it was paying" to Kaine

In reaching this decision, we reject Double Park's argument that the trial court also erred in failing to reduce the $26,000 or $31,000 per month in rent that it was collecting from 120 Ocean Drive by an amount equal to the sales taxes that 120 Ocean Drive was paying under the sublease ($2,170 per month). We do so because the sublease expressly requires 120 Ocean Drive to pay these taxes over and above the amount it was paying to Double Park in rent to use the lot. The amount Double Park was collecting or receiving in rent from 120 Ocean Drive was not, therefore, being reduced by the amount needed to pay sales taxes and therefore correctly was not considered by the trial court in determining the amount of rent, either $26,000 or $31,000 depending on the date, being received by Double Park under its sublease with 120 Ocean Drive.

We therefore reverse the order on appeal and remand this cause with instructions that the court below hold an evidentiary hearing to: (1) determine whether any other payments pursuant to the lease were being made by Double Park to Kaine Parking for the use of this property, and if so, the amount of those payments; and (2) after making these determinations to deduct from the amount of rent received by Double Park from 120 Ocean Drive (either $26,000 or $31,000)

Parking. However, the record does not demonstrate whether any of these sums were being paid to Kaine Parking so as to justify their inclusion. On remand, Double Park may well be able to adduce evidence to demonstrate whether these payments are being made to Kaine Parking. If so, they should be included in determining whether Double Park was receiving more from 120 Ocean Drive than it was paying to Kaine Parking.

9

the total amount of all payments being made by Double Park to Kaine Parking (including monthly rent in the amount of either $22,000, $23,100, or $24,255 plus any other amounts) to determine whether the amount being received by Double Park exceeded the amount being paid to Kaine Parking, and if so, the amount of excess rent due, and thus to be deposited into escrow.

Reversed and remanded with instructions.

EMAS, J., concurs.

LOGUE, J. (concurring)

I concur in the holding to reverse because the trial court set the amount to be escrowed without conducting an evidentiary hearing. As the majority properly determined, an evidentiary hearing was required here because the facts are in dispute. I do not join the remainder of the opinion, however, because it addresses issues that were not decided by the trial court. Those issues are best resolved in the first instance by the trial court in the context of a full factual record developed at the evidentiary hearing which we are ordering. This approach respects the prerogative of the seasoned trial judge, honors our role as an error-correcting court, and avoids the unintended consequences that might result from the doctrine of the law of the case.